Nancy L. HOHNS, Appellant,

v.

Thomas B. GAIN, M.D., Appellee.

Superior Court of Pennsylvania.

Argued June 25, 2002.

Filed Aug. 6, 2002.

John P. Kopesky, Philadelphia, for appellant.

Walter F. Kawalec, III, Cherry Hill, for appellee.

BEFORE: LALLY–GREEN, OLSZEWSKI, and POPOVICH, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Nancy L. Hohns appeals from the January 14, 2002, judgment entered by the Court of Common Pleas of Philadelphia County following the denial of her motion for post-trial relief.[1]  We affirm.

¶ 2 Appellant commenced the instant medical malpractice action against Thomas Gain, M.D., by filing a writ of summons on April 27, 1999.  Her subsequent complaint set forth a claim against appellee for performing an excisional breast biopsy without first obtaining informed consent.  A jury trial began on June 4, 2001, and the evidence presented therein established the following facts:

¶ 3 Appellant underwent her first mammography at Hahnemann University Hospital in December of 1989.  She decided that the test "would be very prudent" since she had turned thirty-eight years old and breast cancer had recently forced her mother to have a mastectomy.  N.T., 6/04/01, at 59.  When the results of this initial mammogram showed a suspicious mass in her right breast, appellant decided to have appellee, a surgeon at the hospital, perform an excisional biopsy to remove the mass.

¶ 4 A pathologist analyzed the removed tissue and discovered carcinoma in situ, which is an early stage cancer.  Appellee performed another excisional biopsy in order to be confident that there was no additional cancerous tissue.  The results were negative, and appellant was satisfied that her breast remained "very normal looking" after each of these biopsies.  *Id.* at 68.  To treat the source of the cancer, appellant received a series of radiation treatments and was placed under the care of a radiation oncologist.  As part of her follow-up care, she also underwent frequent mammographies and made regular visits to appellee.

¶ 5 Although appellant noticed some firmness in her right breast in early 1995, neither her mammographies nor her physical examinations revealed any signs of breast cancer.  During an April 24, 1997, examination, appellee felt a firmness in her right breast that he did not previously notice.  Although her recent mammography did not reveal a suspicious mass, he recommended performing an excisional biopsy to be sure.  Appellant contacted her radiation oncologist, who agreed that she should have the biopsy to rule out a recurrence of the cancer.

¶ 6 Appellant decided to go forward with the biopsy in order to be " '100% certain' there was no recurrent breast cancer."  Trial Court Opinion, 2/20/02, at 3 (citing N.T., 6/04/01, at 167).  Before the procedure, she signed a consent form authorizing appellee to biopsy her right breast.  On April 28, 1997, appellee removed the

1.  Appellant filed a notice of appeal from the lower court's October 9, 2001, order denying her post-trial motions, but did not file a praecipe for entry of judgment until January 14, 2002.  Typically, an appeal from the denial of post-trial motions instead of from the judgment will be quashed as interlocutory under Pa.R.A.P. 301(a).  Rule 905(a), however, provides that where "a notice of appeal is filed after the announcement of a determination but before the entry of an appealable order[,][it] shall be treated as filed after such entry and on the day thereof."  As a result, this appeal was taken from a final order, and we have jurisdiction to reach the merits.

suspected mass, which a pathologist later found to be cancer free. The cosmetic result, however, was not as positive as it had been with the earlier biopsies. Specifically, appellant lost volume in the lower portion of her right breast and had significant scarring. In order to improve the appearance of her breast, she underwent a more complicated reconstructive surgery that left her with additional scarring.

¶ 7 Appellant testified that prior to the final biopsy, appellee did not adequately advise her of the risks associated with this procedure or the alternatives available to her. She stated that she was not aware that such substantial disfigurement could result. Appellant also testified that had she known of the risks of deformity, she "would have felt compelled to get more information regarding all aspects of what might occur and . . . would not have come to any quick decisions." N.T., 6/4/01, at 150.

¶ 8 At the conclusion of the trial, the jury returned a verdict in favor of appellee, finding that (1) he failed to obtain appellant's informed consent, but that (2) the lack of informed consent was not a "substantial factor" in her decision to undergo the biopsy. On June 15, 2001, appellant filed a post-trial motion for a new trial, which the lower court subsequently denied. Appellant then filed the instant appeal in which she raises the following issue:

> Whether the verdict of the jury in favor of [appellee] Thomas B. Gain, M.D., and against appellant Nancy L. Hohns on the issue of causation/substantial factor . . . was contradictory, inconsistent and/or contrary to, and against, [sic] the law, the evidence and/or the weight of the evidence.

Appellant's Brief at 3.

¶ 9 This lone issue combines two separate challenges to the verdict below; judg-ment notwithstanding the verdict (j.n.o.v.) (judgment as a matter of law and sufficiency of the evidence) and weight of the evidence. While appellant confuses these two claims, we must carefully distinguish them, because they not only involve different inquiries concerning the law and evidence, but they also implicate different standards of review.

¶ 10 Appellant's argument that the verdict was contrary to the law and the evidence must be viewed as a motion for judgment as a matter of law and a challenge to the sufficiency of the evidence supporting the verdict. In reviewing the sufficiency of the evidence or a motion for j.n.o.v., this Court must view "the evidence and all reasonable inferences therefrom . . . in the light most favorable to the verdict winner." *Zeffiro v. Gillen*, 788 A.2d 1009, 1013 (Pa.Super.2001); *Fanning v. Davne*, 795 A.2d 388, 393 (Pa.Super.2002). We will only grant j.n.o.v. where the plaintiff demonstrates that she is entitled to judgment as a matter of law or the evidence is "insufficient to sustain the verdict." *Fanning*, 795 A.2d at 392–93. With respect to the latter (i.e., sufficiency of the evidence), evidence will only be insufficient where "no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Id.* at 392.

¶ 11 In order to succeed on an informed consent claim, a patient must establish that (1) the doctor failed to disclose all material facts before obtaining her consent to a particular medical procedure; and (2) this undisclosed information "would have been a substantial factor in the patient's decision whether to undergo [the] procedure." 40 P.S. § 1301.811–A, *re-*

*pealed by* 40 P.S. § 1303.504(d).[2] While the jury agreed with appellant that appellee did not adequately inform her of the risks of and alternatives to the biopsy, it found that possessing this information would not have been a "substantial factor" in her decision. This second element requires some causal connection between the lack of informed consent and the patient's decision to undergo the procedure. Courts throughout the Commonwealth have used the "substantial factor" test to determine causation in common law negligence since our Supreme Court adopted this standard in 1977. *See Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111, 114 (1977). Unlike traditional causation, the "substantial factor" element in the instant statute requires the jury to speculate whether being fully informed would have played a significant role in the patient's decision.

¶ 12 Although this statute requires a more speculative endeavor, our analysis of this test in common law negligence cases provides us with some guidance. We have held that a "substantial factor" is a factor that is significant or recognizable even though it may be "minor vis-a-vis" other potential causes. *Jeter v. Owens–Corning Fiberglas Corp.,* 716 A.2d 633, 637 (Pa.Super.1998). In making this determination, it is helpful to consider the "number of other factors which contribute" to the harm or, in this case, to the patient's consent and "the extent of the effect which they have in producing it." *Id.* (citing Restatement (Torts) § 433(a)).

■ ¶ 13 In the context of an informed consent action, the patient need not show that she would have chosen differently had she possessed the information. *See Sagala v. Tavares,* 367 Pa.Super. 573, 533 A.2d 165, 168–69 (1987). The fact that the risks and alternatives are one consideration among a number of other factors, however, does not automatically satisfy this requirement. As is the case with the substantial factor test in negligence cases, if other factors completely dominate the patient's decision to proceed with a procedure, this lack of information cannot be deemed substantial. *See Jeter,* 716 A.2d at 637.

■ ¶ 14 Appellant's first argument involves a legal issue concerning this causation requirement. She speculates that the jury applied the incorrect legal standard by determining whether she would have proceeded with the biopsy regardless of the information. Appellant offers no support for this theory, and we find no evidence in the record that the law was misapplied. The judge correctly instructed the jury on the "substantial factor" test, and the interrogatories answered by the jury confirm that they based their decision on this standard. N.T., 6/8/01, at 21–22. Therefore, this argument that the verdict was contrary to law is meritless.

■ ¶ 15 We now turn to appellant's second basis for requesting j.n.o.v.: that there was insufficient evidence to support the jury's finding that had appellant received information about the biopsy's risks and alternatives, such information would not have been a "substantial factor" in her "decision whether to undergo [the biopsy]". *See* 40 P.S. § 1301.811–A. In determining whether knowledge of these risks and alternatives would have been a "substantial factor," we must consider both the importance of this information itself and the importance of the other factors that would have influenced her decision. After thoroughly reviewing the record, we conclude that the testimony elicited concern-

---

**2.** Section 1301.811–A was in effect at the time of appellant's surgery and therefore is applicable to this case. The changes imposed by the new statute do not affect the requirements for an informed consent claim.

ing these issues at trial was sufficient to sustain the verdict.

¶ 16 The trial court pointed to a number of significant factors that overwhelmingly influenced appellant's original decision to have the biopsy. These factors include: (1) appellant's family history of breast cancer and her mother's mastectomy, (2) the second opinion she received from her radiation oncologist, and (3) appellant's goal of being "100% certain" that the breast cancer did not return. Trial Court Opinion, 2/20/02, at 7–8. Having witnessed her mother lose her entire breast to cancer and having survived breast cancer once herself, appellant's desire to be completely sure she was cancer free dominated her decision.

¶ 17 In light of the evidence presented on these issues, the jury could have reasonably found that had appellant been aware of the risks and alternatives to excisional biopsy, this "100% certain[ty]" would have remained the sole or overwhelming factor in her decision. With such a strong factor guiding her, the consideration of the risks and alternatives could not have been a "substantial factor." This conclusion is reinforced by an examination of the available alternatives: doing nothing, a needle biopsy, an incisional biopsy, and a frozen section biopsy. Appellant's own expert, Dr. Robert E. Mallin, testified that for a patient, such as appellant, who wanted to be positive she did not have cancer, none of these alternatives approached the level of certainty provided by an excisional biopsy. N.T., 6/05/01, at 120–21. Therefore, despite appellant's testimony to the contrary, the alternatives would have had very little effect on her decision and certainly would not have been a "substantial factor."

¶ 18 Similarly, this evidence allowed the jury to conclude that awareness of the potential risks of scarring would not have been a substantial factor in appellant's decision. It was quite reasonable for the jury to believe that a woman whose mother had a mastectomy and who herself had already battled cancer would have given very little consideration to alternatives that reduced the chance of scarring at the expense of medical certainty.

¶ 19 Appellant argues, however, that all of the considerations the trial court mentioned are irrelevant, because they pertain to whether she ultimately would have gone through with the biopsy. We do not agree. The question of whether the knowledge of risks and alternatives would have been a substantial factor in her decision does not exist in a vacuum. It is inevitably affected by these other factors. As we mentioned above, the presence alone of other factors will not exclude the information from being a substantial factor. *Jeter*, 716 A.2d at 637. In some cases, the risks and alternatives to a procedure will be significant to the patient's decision even though she also considers other factors. Where, as here, however, the jury could reasonably conclude that appellant's desire to be cancer free was the sole or overwhelming factor in her decision, the risks and alternatives associated with excisional biopsy could not have been a "substantial factor."

¶ 20 Appellant's remaining challenge to the weight of the evidence by its nature involves a request for a new trial rather than for j.n.o.v. The trial court has discretion in granting or denying a new trial, and we must determine whether it "clearly and palpably abused [this] discretion or committed an error of law, which affected the outcome of the case." *Pioneer Commercial Funding Corp. v. American Fin. Mortgage Corp.*, 797 A.2d 269, 279 (Pa.Super.2002) (citing *Whyte v. Robinson*, 421 Pa.Super. 33, 617 A.2d 380, 382 (1992)). The verdict will be against the

weight of the evidence and a new trial will be warranted only when the verdict is "so contrary to the evidence it shocks one's sense of justice." *Fanning,* 795 A.2d at 393. Such a remedy will not be appropriate, however, if the fact finder "could have decided [the case] either way." *Id.* (citing *Cangemi ex rel. Estate of Cangemi v. Cone,* 774 A.2d 1262, 1265 (Pa.Super.2001)).

¶ 21 The record does not support appellant's argument that the verdict was so contrary to the evidence so as to shock one's conscience. As we discussed in reviewing the sufficiency of the evidence, ample evidence supported the jury's finding that awareness of the risks and alternatives to excisional biopsy would not have been a "substantial factor" in appellant's decision to consent. The jury could have reasonably believed that these considerations would have been insignificant in light of her strong desire to be completely certain the cancer had not recurred. Furthermore, although appellant testified that she would have considered the risks and alternatives before making a quick decision, the jury was free to discount this testimony. *See id.* at 393–94.

¶ 22 At most, the evidence presented at trial is conflicting, and the jury could have decided the case either way. Even if we were inclined to agree with appellant's interpretation of the facts, which we are not, we may not "merely substitute our opinion concerning the weight of the evidence" for that of the jury. *See Zeffiro,* 788 A.2d at 1012. Therefore, the trial court did not err in denying her request for a new trial.

¶ 23 Judgment affirmed.

¶ 24 POPOVICH, J., Concurs in the Result.