**Cadora v. Novak**

*George Oschal III,* for plaintiff Cardora.
*Kevin M. Higgins,* for defendant Novak.
*John McGrath, Robert Smith,* and *Susan Luckenbill,* for defendant Peranich.

*Daniel W. Munley,* for plaintiff Novak.

MINORA, *J.,* July 19, 2005—Before the court are the plaintiff's post-trial motions filed in opposition to a jury verdict decided on September 17, 2003. The motions for post-trial relief have been filed pursuant to Pa.R.C.P. 227.1. All parties have filed their respective responses rendering this matter ripe for disposition.

## STATEMENT OF THE CASE

Three separate docketed matters were consolidated for purposes of trial commenced September 15, 2003, in the Lackawanna County Court of Common Pleas. The factual issues prompting trial centered on the allocation of liability of the parties involved in a three-vehicle accident which occurred on August 20, 1999.[1] Specifically, on the date of the collision, defendant, Brian Novak, was operating a 1987 Toyota Tercel, owned by his parents, while defendant, Stephanie Peranich, was operating her 1997 Saturn SC-2 and Darren Cadora, the plaintiff, was driving his 1996 Dodge Ram pickup truck. It is uncontested that on the day of the accident, in Scranton, Pennsylvania, there was moderate precipitation. (N.T. 9/16/03 p. 36.)[2] According to testimony presented at trial, at approximately 4:45 p.m., both defendants were driving southbound upon the North Scranton Expressway

---

1. *Peranich v. Novak* docketed at Lackawanna County no. 00 CV 5127; *Novak v. Peranich* docketed at Lackawanna County no. 01 CV 3874; *Cadora v. Novak and Peranich* docketed at Lackawanna County no. 00 CV 2551.

2. All references made herein refer to transcript of three-day trial of September 15, 2003 through September 17, 2003 before this court.

roughly .1 mile north of the Keyser Avenue exit ramp. Ms. Peranich attempted to maneuver a lane change from the right lane to the passing lane when her car collided with Mr. Novak's vehicle. Novak, already in the left lane, traveling at a speed between 45 and 55 mph, collided with the concrete barrier, splashing Mr. Cadora's windshield with water. Cadora, the plaintiff herein, then collided into the rear of Novak's car. (N.T. 9/16/03, p. 41.)[3]

After a three-day trial, the jury returned verdicts in all three cases.

In the matter of *Novak v. Peranich,* the following verdict was decided . . .

"Question 1. Do you find that the defendant, Stephanie Lea Peranich was negligent? Yes _X_.

"Question 2. Was the negligence of the defendant you found to be negligent at question no. 1 a factual cause in bringing about the accident? Yes _X_.

"Question 3. Was the plaintiff Brian Novak negligent? Yes _X_.

"Question 4. Was the negligence of the plaintiff Brian Novak found at question no. 3 a factual cause in bringing about the accident? Yes _X_.

"Question 5. . . .

"(a) Percentage of causal negligence attributable to defendant, Stephanie Lea Peranich . . . 77%.

"(b) Percentage of causal negligence attributable to plaintiff Brian Novak . . . 23%."

---

3. Testimony was provided indicating the speed limit on the date of the collision to be 40 mph or 50 mph. (See N.T. 9/16/03, p. 85.)

In the matter of *Peranich v. Brian Novak, Anthony Novak Jr. and Mary Ann Novak*,[4] the jury returned the following verdict . . .

"Question 1. Do you find that the defendant, Brian Novak, was negligent? Yes _X_.

"Question 2. Was the negligence of the defendant you found to be negligent at question no. 1 a factual cause in bringing about the accident? Yes _X_. . . .

"Question 5. Was the plaintiff Stephanie Lea Peranich negligent? Yes _X_.

"Question 6. Was the negligence of the plaintiff Stephanie Lea Peranich found at question no. 5 a factual cause in bringing about the accident? Yes _X_.

"Question 7 . . .

"(a) Percentage of causal negligence attributable to defendant, Brian Novak . . . 23%.

"(b) Percentage of causal negligence attributable to plaintiff Stephanie Lea Peranich . . . 77%."

In the present matter, *Cadora v. Novak and Peranich,* the jury rendered a verdict as follows:

"Question 1. Do you find that any of the defendants were negligent?[5]

---

4. The claims raised by all parties against Mary Ann Novak and Anthony Novak Jr. have been discontinued and terminated with prejudice by stipulation entered by the parties and filed October 23, 2002. The only remaining claim at trial involving Mary Ann and Anthony Novak was for negligent entrustment.

5. Following question no. 1 was an instruction that stated:

"If you answered question no. 1 'No' as to all defendants, this represents a verdict in favor of the defendants and the plaintiff, Darren Cadora, cannot recover and you should not answer any further questions and you should return to the courtroom. If you answered 'Yes' to either defendant, please go on to question no. 2."

"(a) Defendant, Brian Novak. No  X .

"(b) Defendant, Stephanie Lea Peranich. No  X ."

(See jury verdicts: *Peranich v. Novak,* 00 CV 5127; *Novak v. Peranich,* 01 CV 3874; *Cadora v. Novak and Peranich,* 00 CV 2551.)

After the above verdict was read, the plaintiff, Cadora, made his objection on the record and subsequently filed the present motions requesting post-trial relief. The relief requested is for judgment n.o.v. based upon the inconsistent verdicts rendered, or alternatively, for the granting of a new trial. Such motions are required to be filed within 10 days of the jury verdict, unless additional time is permitted by the court. Here, the plaintiff filed his motions October 8, 2003, with the court's permission for an extension.

## Post-Trial Relief

Pursuant to Pa.R.C.P. 227.1, post-trial motions may be filed upon written motion by any party to an action, and, the court may:

"(1) order a new trial as to all or any of the issues; or

"(2) direct the entry of judgment in favor of any party; or

"(3) remove a nonsuit; or

"(4) affirm, modify or change the decision; or

"(5) enter any other appropriate order."

This court has previously set forth the standards regarding judgment n.o.v. and granting of a new trial in *Covey v. Deer Park Lumber Inc.,* 01 CIV 4587 C.C.P. Lacka. Cty. (Judge Minora, January 16, 2004). We shall begin our discussion by restating those points herein.

A judgment n.o.v. can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law and/or (2) the evidence was insufficient to sustain the verdict since no two reasonable minds could disagree that the verdict should have been rendered for the movant. *Van Zandt v. Holy Redeemer Hospital,* 806 A.2d 879, 885 (Pa. Super. 2002); *Parker v. Freilich,* 803 A.2d 738, 744 (Pa. Super. 2002); see also, *Janis v. AMP Inc.,* 856 A.2d 140 (Pa. Super. 2004). After reviewing the record, with all factual inferences decided against the movant, the law must nonetheless necessitate a verdict in the movant's favor for the court to grant a judgment n.o.v. as a matter of law. *Janis, supra* at 143. In regard to the second factor, the court will grant a judgment n.o.v. when, after reviewing the evidence of record, the court concludes that the evidence presented was more than sufficient for a jury to return a verdict for the movant. *Id.* The reviewing court must consider all the evidence admitted at trial in deciding whether there was sufficient competent evidence to sustain the verdict, *Cruz v. Northeastern Hospital,* 801 A.2d 602, 607 (Pa. Super. 2002), the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the verdict winner. *Hohns v. Gain,* 806 A.2d 16, 19 (Pa. Super. 2002); *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002). Furthermore, when considering questions concerning credibility and weight of the trial evidence, the trial court may not substitute its judgment for that of the fact-finder. *Van Zandt,* 806 A.2d at 886; *Parker, supra.*

A verdict is deemed to be against the weight of the evidence only when it is so contrary to the evidence as to shock one's sense of justice, *Hohns,* 806 A.2d at 21-22, such that the award of a new trial is imperative

"so that right may be given another opportunity to prevail." *Yacoub v. Lehigh Valley Medical Associates,* 805 A.2d 579, 586 (Pa. Super. 2002). Unlike judicial review of a motion for judgment n.o.v., "[t]he court is not required to consider the evidence in the light most favorable to the verdict winner when passing on the question of whether a verdict is against the weight of the evidence." *Lanning v. West,* 803 A.2d 753, 766 (Pa. Super. 2002). But, see *Parker,* 803 A.2d at 744 (stating that, in determining if a new trial should be granted, "we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict."). It is black letter law that a jury is entitled to believe all, part, or none of the testimony or evidence presented, *Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.,* 797 A.2d 269, 279 (Pa. Super. 2002), and may accept or reject testimony or evidence in whole or in part even if it is uncontradicted. *Bezerra v. National R.R. Passenger Corp.,* 760 A.2d 56, 63 (Pa. Super. 2000), *appeal denied,* 567 Pa. 708, 785 A.2d 86 (2001); *Rasieleski v. Connor,* 56 D.&C.4th 257, 262-63 (Lacka. Cty. 2002).

The standard to be applied to a motion for judgment n.o.v. and motion for a new trial are similar, but not identical. Thus, when considering a request for a new trial, it is not the role of a reviewing court to pass on the credibility of witnesses and "a new trial should not be granted because of a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion." *Andrews v. Jackson,* 800 A.2d 959, 962 (Pa. Super. 2002); *Rasieleski,* 56 D.&C.4th at 262. The remedy of a new trial is simply not appropriate in

cases where the jury could have decided the matter in favor of either party. *Hohns, supra; Lanning, supra.*

## Multiple Jury Verdicts Are Presumed Consistent

Our Superior Court has stated that "[t]he entry of a judgment notwithstanding the verdict . . . is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Education Resources Institute Inc. v. Cole,* 827 A.2d 493, 497 (Pa. Super. 2003), quoting *Neal by Neal v. Lu,* 365 Pa. Super. 464, 478, 530 A.2d 103, 110 (1987). Our Supreme Court has stated that "where there is a question of whether jury findings are consistent or inconsistent, consistency will be presumed unless there is no reasonable theory to support the jury's verdict." *Beyrand v. Kelly,* 434 Pa. 326, 329, 253 A.2d 269, 270 (1969), citing *Hornak v. Pittsburgh Railways Co.,* 433 Pa. 169, 249 A.2d 312 (1969); *Petrack v. Mlakar, Hanolt & Mlakar,* 421 Pa. 136, 218 A.2d 750 (1966). Only if there is no logical theory that supports the verdict, then the presumption of consistency will be defeated. *McDermott v. Biddle,* 544 Pa. 21, 674 A.2d 665 (1996).[6]

---

6. In the *McDermott v. Biddle* case, the *Philadelphia Inquirer* published three articles entitled "Above the Law" (ALT I) authored by Daniel R. Biddle about the Supreme Court of Pennsylvania and particularly, the late Justice James T. McDermott, as a Supreme Court Justice and after he left the bench. One of the published articles alleged that McDermott employed nepotism and his prestige to compel the Philadelphia County District Attorney into hiring his son, Jamie McDermott as an assistant district attorney. McDermott instituted a libel action against the paper, the author and publishing corporations. The next year, a series of articles were printed with a few minor changes in tabloid form and included commentaries and cartoons by the defendants of the first action (ALT II). The tabloid publication was circulated at a national conference of the American Bar Association, the

## *Issue*

Presently, it is Mr. Cadora's proposition that a verdict of negligence to one party requires verdicts of negligence to all. More specifically, since the jury found that Novak and Peranich were negligent to one another, they must have been negligent to Cadora. Moreover, at trial, an alternative theory was presented that Cadora violated the assured clear distance ahead rule, allowing the jury to make the determination of whether Cadora himself was negligent in bringing about his own injuries.[7] Cadora's

---

American Judicature Society and journalism institutes and newspapers across the country. McDermott instituted a second libel action. Both actions were consolidated and tried together. Separate verdict slips were presented to the jury, one for each publication and requiring individual findings be made to each publication. The jury returned a verdict in which McDermott had failed to prove that the first publication in the *Philadelphia Inquirer* was false. A verdict was returned in which the tabloid publication was false and damages were awarded in the amount of $3,000,000 in compensatory damages and $3,000,000 in punitive damages. McDermott died and his sons succeeded to his interest and were substituted as parties. Post-trial motions were made to the trial court which found that the verdicts were *fatally* inconsistent and granted a new trial. McDermott's estate appealed the order that granted a new trial. Upon review, the Supreme Court held that it was acceptable for the jury to reach different conclusions in the two cases and that the verdicts must stand. The court noted that the jury's verdicts reflected that there was a material difference in the two publications that allowed them to find that the tabloid article was false while the original was not.

7. The assured clear distance rule was explained to the jury as follows: "no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within an assured clear distance ahead. . . . This act can dictate the duty of care required of someone in the same situation as Mr. Novak or Mr. Cadora. If you

counsel suggests that to propose Mr. Cadora was alone responsible for his involvement in the auto accident is mere speculation. (See plaintiff's brief in support of post-trial motions p. 13.) It is our task herein to establish if the weight of the evidence produced at trial supports the plaintiff's contention, and if so, is a judgment in favor of the movant warranted or must we grant a new trial.

## Negligence

The causes of action asserted by Mr. Cadora against his defendants, Brian Novak and Stephanie Peranich are grounded in negligence. "To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Van Zandt v. Holy Redeemer Hospital,* 806 A.2d 879, 886 (Pa. Super. 2002) quoting *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458, 461 (1998). Additionally, if the plaintiff fails to meet the burden of proof, a judgment in favor of the defendant is proper. *Van Zandt, supra* at 886 citing *Buckley v. Exodus Transit & Storage Corp.,* 744 A.2d 298, 309 (Pa. Super. 1999). Here our analysis is dependent upon determining whether Cadora sustained his burden of proof at trial on the charges of negligence of Novak and Peranich.

## The Evidence

To determine whether a post-trial remedy is necessary in this negligence action, we must review the evidence

find there was a violation of this act . . . you may find that either Mr. Novak or Mr. Cadora were negligent as a matter of law. However, You are not required to make that finding." (See N.T. 9/17/03, pp. 129-30.)

of record. The parties presented the following testimony detailing the events of the accident.

In recalling the events of the accident, Peranich testified that as she was traveling in the right lane behind a tractor-trailer truck, she became uncomfortable as she believed the truck began to apply its brakes. She testified that she looked in all mirrors, checked her blind spot and proceeded to the left lane of travel. It is also Peranich's testimony that her entire vehicle was in the left lane when the impact occurred. (N.T. 9/16/03 p. 86.) Conversely, Lieutenant Thomas, the officer on the scene, testified at trial that on the day of the accident Peranich explained to him that she started to move into the left lane and pass a tractor-trailer and at that time she was unsure if something hit her vehicle or if she struck something in the right lane. (N.T. 9/15/03 pp. 55-56.)

Brian Novak supported his position by testifying that his last clear memory before the crash was that he was sitting at the traffic light by the Fashion Mall on Route 6 as he was driving to work. (N.T. 9/16/03 p. 38.) Mr. Novak estimated that his speed before the accident was about 55 miles per hour. (N.T. 9/16/03 p. 41.) Brian Novak testified that he only retained bits and pieces of memory of the accident and he remained unsure of the reliability of his own testimony. (N.T. 9/16/03 Novak p. 38.) Novak testified that he was traveling in the left lane at a speed of 55 miles per hour, but again, he was unsure. (N.T. 9/16/03 p. 42.)

Mr. Cadora testified that he was in the passing lane of the expressway previous to the collision. He remembered observing a small vehicle in front of him. Cadora stated that when the Novak vehicle hit the berm, water splashed

Cadora's windshield momentarily blinding him. (N.T. 9/16/03 p. 57.) At that point the Novak and Cadora collision occurred. (N.T. 9/16/03 p. 57.) Cadora recalled that he hit his brakes but already had impact with Novak. (N.T. 9/16/03 p. 57.) Mr. Cadora provided testimony that he was traveling three to four car lengths behind Mr. Novak prior to impact. (N.T. 9/16/03, p. 60.) Yet there is conflicting testimony that Cadora was traveling only one car length behind Novak before the collision. (N.T. 9/16/03 pp. 61-62.) Additional testimony was provided that, following the accident, Mr. Cadora told Ms. Peranich in the hospital that the accident was not her fault. (N.T. 9/16/03 Peranich p. 82.) Yet, Cadora refuted he ever made that statement. (N.T. 9/16/03 Cadora p. 65.)

The experts' accounts as to the course of events are somewhat different. Mr. Taylor, a traffic accident reconstructionist, was offered as an expert to share his opinion as to the events involved in the accident. Mr. Taylor based his opinion on the materials provided to him, including the Scranton Police Accident Report no. 9940755, photographs of the vehicles and a view of the scene. (N.T. 9/15/03 p. 26.) The conclusion provided to the jury by Mr. Taylor was that the Novak and Peranich collision occurred while Peranich was *in the process* of a lane change from the right to left lanes. (N.T. 9/15/03 p. 30.) (emphasis added) As indicated to the jury, Taylor pointed to the damage sustained to the left rear corner of the Peranich vehicle and side of her car by pointing to a photograph of Peranich's vehicle. (See plaintiff's exhibit no. 3; N.T. 9/15/03 p. 31.) Again Taylor, employing a photograph, indicated to the jury that the Novak vehicle was damaged above the right front bumper. The damage, he explained, moved right to left along the bumper,

which is referred to as an angular impact. (See plaintiff's exhibit no. 17; N.T. 9/15/03 p. 32.) Taylor explained this damage was indicative of contact moving from the left to right direction. *(Id.)* When asked on cross-examination whether the accident involving Mr. Cadora's vehicle and Mr. Novak's vehicle occurred after the collision of the Novak and Peranich vehicles, Mr. Taylor, in his expert capacity, answered yes. (N.T. 9/15/03 p. 45.) Taylor suggested that it was his belief Mr. Cadora was not responsible for the accident. *(Id.)*

Mr. Barrett was offered as an additional expert, also as an accident reconstructionist. Mr. Barrett stated to a reasonable degree of accident reconstruction certainty, relying on photographic evidence, that the Peranich and Novak vehicles endured an angular crash based upon the location of the damage, contact damage and induced damage on both vehicles. (N.T. 9/16/03 p. 120.) He explained, with a reasonable amount of certainty, that after the point of impact the Peranich vehicle rotated in a counterclockwise direction toward the concrete divider separating opposing traffic, while the Novak vehicle rotated in a clockwise fashion exposing the right side of the vehicle to the remaining traffic in the southbound lanes. Testimony was provided that the amount of override damage[8] to the Novak vehicle indicates that Novak attempted to decelerate or brake prior to impact. (N.T. 9/16/03 p. 133.) According to Barrett, the cause of the Novak and Peranich crash was determined to be that Novak was traveling at a greater speed than the Peranich vehicle. (N.T. 9/16/03 p. 135.) It is uncontested that the

---

8. Override damage—damage above the front bumper. (See N.T. 9/16/03 p. 133.)

Peranich vehicle and the Cadora vehicle never made contact.

After reviewing all the testimony, including that of the parties and experts, the only thing that is clear is that no one knows for sure exactly how the accident took place. No conclusive evidence was provided by either expert as to the cause of the Novak and Cadora collision although the experts agreed Cadora was not the sole cause.

Immediately after the accident occurred, two cars were strewn across both southbound lanes of travel as the Peranich vehicle was located down the Keyser Avenue exit ramp. Undoubtedly, the jury, as the finder of fact, had many different versions of the same story to sort through.

### The Instruction

The court's instructions to the jury with regard to all three vehicles specified that there was one accident, but being a row of dominos within the accident. (N.T. 9/17/03 p. 117.) Since this trial involved claims of negligence, on the issue of factual cause, the jury was instructed that the plaintiff carried the burden of proof to show the defendant's conduct caused the plaintiff's damages. (N.T. 9/17/03 p. 120.) The court further instructed that "the test for factual causation has been met when the conduct in question has such an effect in producing the accident as to lead reasonable persons to regard it as one of the contributing causes that is neither insignificant nor inconsequential considering all the circumstances of the case." (N.T. 9/17/03 p. 123.) The jury was further directed by instruction that the plaintiff must prove that

the defendant's conduct caused the plaintiff's damages. (N.T. 9/17/03 p. 120.) Additionally, the court provided the jury with the duties regarding several alternative theories of negligence presented under the Pennsylvania Motor Vehicle Code, 75 Purdens Consolidated Statute Annotated §3309 dealing with a lane change, speed of travel, assured clear distance and speeding.[9]

## Conclusion

At present, it is the court's role to determine whether the negligent and non-negligent verdicts can be reconciled. In carrying out this function, the court must determine if any reasonable theory exists to support the jury's verdict; if so, consistency of the verdicts will be presumed. *Beyrand supra.* This function requires review of the evidence by the court to determine if the evidence exists to support the jury's verdict. We conclude that such evidence does exist.

Looking at the evidence in the light most favorable to the verdict winner, this court believes that the jury concluded that the plaintiff, Mr. Cadora, did not meet his burden of proof. He failed to establish that the negligence of Novak or Peranich caused Cadora's damages. Novak and Peranich were found not to be liable to Cadora for any damages sustained. Evidence exists to sustain the verdict. Quite possibly the jury believed Mr. Cadora himself was more responsible for the collision in not following the assured clear distance rule, especially given

---

9. As the statutes were explained and provided to the jury, they received an instruction that, should they find a violation of one of the duties of care listed, then they too must find that the parties required to follow those duties of care as negligent. (N.T. 9/17/03 pp. 126-31.)

the precipitation and wet conditions on the day of the collision. Adequate evidence exists to support the jury's verdict. Therefore, under these circumstances, the presumption that the verdicts here are consistent prevails since there are several valid and reasonable explanations, supported by the weight of the evidence, that justify the jury verdicts rendered. This is especially so when viewed through the prism of the light most favorable to the verdict winner. We do not find that the movant is entitled to judgment as a matter of law. Further, the evidence presented at trial was sufficient to sustain a verdict in favor of the defendants. Moreover, reviewing the record in the light most favorable to the verdict winners, a new trial would not be justified. An appropriate order follows.

## ORDER

And now, to wit, July 19, 2005, upon consideration of the plaintiff, Cadora's post-trial motions, arguments of counsel and in accordance with the preceding memorandum, it is hereby ordered and decreed:

(1) Plaintiff's post-trial motion for judgment n.o.v. is denied and dismissed.

(2) Plaintiff's post-trial motion for grant of new trial is denied and dismissed.