**Golden v. Smolko**

*James E. Foerstner* and *Sal Cognetti Jr.,* for plaintiffs.

*Dominick J. George* and *Jaynes C. Sargent Jr.,* for defendants.

MINORA, *J.,* June 4, 2010—

## INTRODUCTION

Before the court are defendants' Milan J. Smolko M.D. and Milan J. Smolko M.D. P.C., post-trial motion requesting a new trial. This matter resulted in a jury verdict rendered against all of the named defendants. However, prior to the closing arguments being presented defendant Lillian Longendorfer D.O. reached a settlement with the plaintiffs in exchange for a joint tort-feasor release. For reasons articulated in the following memorandum defendants' Milan J. Smolko M.D. and Milan J. Smolko M.D. P.C. post-trial motion for a new trial is granted.

## STATEMENT OF THE CASE

This case is derived from the care and treatment of Terrence Golden, plaintiffs' decedent, a 59-year-old man who suffered and died from bladder cancer. On September 22, 2002 Mr. Golden presented at Dr. Smolko's office with complaints of long-standing urinary urgency and difficulty postponing urination, or frequent urination symptoms. Dr. Smolko diagnosed Mr. Golden as has having an enlarged prostate and prescribed Flomax.

On January 7, 2003 Mr. Golden presented at Dr. Smolko's office with complaints of a slow urine stream,

getting up twice in the night to urinate, and some burning during urination. Dr. Smolko diagnosed Mr. Golden as suffering from prostatitis and prescribed an anesthetic, antibiotics, and a muscle relaxant. June of 2003 Mr. Golden contacted Mr. Smolko by phone and Dr. Smolko refilled his prescriptions.

On July 16, 2003 Mr. Golden returned to see Dr. Smolko. At that time Dr. Smolko performed a cystoscopy and bladder biopsy. The biopsy was read and interpreted by co-defendant Dr. Longendorfer, a pathologist at Wayne Memorial Hospital. Dr. Longendorfer diagnosed the biopsy as "urinary bladder muscosal tissue showing features suggestive of chronic cystitis. No evidence of malignancy." N.T. 05/06/09, p. 66.

On August 26, 2003 Mr. Golden returned to see Dr. Smolko, complaining of continued and persistent burning upon urination. Dr. Smolko ordered a PSA to test for prostate cancer. Plaintiffs alleged and presented evidence Dr. Smolko altered his medical records to make it appear as if at this visit he ordered a urine culture and urine cytology test. N.T. 5/6/09 pp. 201-203. On December 2, 2003 Mr. Golden visited Clinical Laboratories for a urine study, the results of which indicated that Mr. Golden had blood in his urine. Dr. Smolko took no action upon receiving the Clinical Laboratories results.

In March of 2004 Mr. Golden saw Dr. Cassone, a different urologist, complaining of blood in the urine, Dr. Cassone performed a urinalysis which revealed the presence of blood, and performed an IVP and cystoscopy. These tests revealed Mr. Golden had a urethral stricture. In April of 2004 a repeat cystoscopy suggested that questionable bladder tumors might be present. In June

of 2004 Dr. Cassone repeated the cystoscopy and performed a transurethral resection of the prostate and bladder biopsies. The biopsies revealed Mr. Golden had invasive high-grade transitional cell carcinoma.

In August of 2004 Mr. Golden underwent a radical cystectomy (bladder removal and reconstruction), lasting nine and a half hours. Mr. Golden had several more surgeries and underwent chemotherapy. Mr. Golden also had several reoccurrences and subsequent surgeries. On January 21, 2008 Mr. Golden succumbed to the cancer and passed away.

On April 13, 2005, plaintiffs commenced this suit by filing a complaint alleging medical malpractice against the defendants for failure to properly diagnose and treat Terrence Golden's bladder cancer. On October 2, 2008 plaintiffs filed a second amended complaint. The civil jury trial of this case began on May 4, 2009 and a verdict was rendered by the Jury on May 13, 2009. On May 22, 2009 defendants Milan Smolko M.D. and Milan Smolko M.D. P.C. filed a timely post-trial motion requesting a new trial on six grounds. On June 29, 2009, plaintiffs filed an answer to defendants post-trial motion. On December 1, 2009, upon transcript completion, defendants filed a memorandum of law in support of their post-trial motion, and on January 5, 2010 plaintiffs filed a memorandum of law in opposition to defendants' post-trial motion. On January 19, 2010 defendants filed a supplemental memorandum of law in support of their post-trial motions. On January 26, 2010 this court presided over an oral argument regarding defendants' post-trial motion. As this matter has been properly plead, briefed, and argued it is now ripe for disposition.

## STANDAND OF REVIEW

Pursuant to Ra.R.C.P. 227.1, post-trial motions may be filed upon written motion by any party to an action and, the court may;

"(1) order a new trial as to all or any of the issues; or

"(2) direct the entry of judgment in favor of any party; or

"(3) remove a nonsuit; or

"(4) affirm, modify or change the decision; or

"(5) enter any other appropriate order."

The Commonwealth Court in *Luzerne County Flood Protection Authority v. Reilly,* 825 A.2d 779, 782 (Pa. Commw. 2003), quoting the Pennsylvania Supreme[1] court explained how a trial court should evaluate a motion for a new trial.

"It is important to recognize that the trial court's decision whether to grant a new trial rests on its preliminary or predicate decision as to whether any reasons exist for granting a new trial. In other words, there are two levels to a trial court's decision whether to grant a new trial: First, the court must determine whether, colloquially speaking, a 'mistake' (or mistakes) was made at trial. Second, the court decides whether the mistake (or mistakes) is sufficient basis for granting a new trial. The first decision—whether a mistake was made—may involve factual, legal, or discretionary matters. However, the second and ultimate decision—whether to grant a new

---

1. *Morrison v. Department of Public Welfare,* 538 Pa. 122, 133, 646 A.2d 565, 571 (1994).

trial—is always a discretionary matter because it requires consideration of the particular circumstances of the ease."

"When deciding to grant or deny a new trial, the trial court must first engage in a two-part analysis: (1) whether a mistake occurred at trial; and (2) whether the mistake was prejudicial to the moving party." *Slappo v. J's Devolopment Associates Inc.,* 791 A.2d 409, 414 (Pa. Super. 2002).

The purpose of post-trial motions is to give the trial court an opportunity to review and reconsider its earlier rulings and correct its own errors that may have occurred at the trial court level before an appeal is taken. Post-trial motions should be granted only where there is clear error of some kind, whereby someone has suffered prejudice by that error. *Lahr v. City of York,* 972 A.2d 41, 47 (Pa. Commw. 2009).

"Consideration of all new trial claims is grounded firmly in the harmless error doctrine 'which underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.'" *Rettger v. UPMC Shadyside,* 991 A.2d 915, 923-24 (Pa. Super. 2010).

## LEGAL ANYLSIS

The six issues the defendants raised in their motion for post-trial relief are: (1) Plaintiffs failed to prove causation, (2) The court should have granted Dr. Smolko's request for a mistrial upon plaintiffs' reference to Dr.

Smolko's alleged addiction to OxyContin; (3) The court erred in providing a supplemental jury charge to the jury after completion of the initial charge; (4) The court should have precluded the testimony of Joseph Duffy; (5) The court erred in allowing counsel for the settling Defendant, Dr. Longendorfer, to present closing arguments to the jury; and (6) The court should have precluded the testimony of Dr. Eisneberger as it was cumulative. Due to the fact that we find the second issue to be dispositive of the case, we will address this issue first.

### 1. The Court Should Have Granted Dr. Smolko's Request for a Mistrial Upon Plaintiffs' Reference to Dr. Smolko's Alleged Addiction to OxyContin

Defendants have asserted they are entitled to a new trial because the plaintiffs' counsel intentionally violated this court's in limine ruling. Specifically asserting that this court's ruling barred plaintiffs' counsel from mentioning or referring to Dr. Smolko as an addict or addicted to the narcotic OxyContin. Defendants assert the Superior Court's ruling *Poust v. Hylton,* 940 A.2d 380 (Pa. Super. 2007) and *Siegal v. Stefanyszyn,* 718 A.2d 1274 (Pa. Super. 1998), mandates that a mistrial be awarded when counsel for a party violates an in limine ruling.

Plaintiffs contends that defendant is barred from asserting a violation of the in liinine ruling because defense counsel did not immediately request a mistrial at the time of the incident, and therefore has waived any appealable issue they may have had. Further, plaintiffs assert that when viewing the cross-examination of Dr. Smolko in context, the plaintiffs did not violate the court's in limine

ruling. It is plaintiffs' contention that because Dr. Smolko was misleading the jury, they had a right to question him about being addicted to OxyContin. Further, plaintiffs assert that the holdings of both *Poust* and *Siegal* are inapplicable in this case.

Defendant presented a motion in limine to preclude the use of Dr. Smolko's guilty plea in drug court, to preclude the presentation of evidence on the subject of Dr. Smolko's OxyContin use, and to preclude the use of Dr. Smolko's loss of his medical license at trial. N.T. 5/6/09, p. 10 ll. 18-25. Plaintiffs' counsel voluntarily withdrew the requested use of Dr. Smolko's guilty plea in drug court, and therefore the only issues this court ruled on where whether Dr. Smolko's loss of medical license and OxcyCotin use could be raised at trial. N.T. 5/6/09, p. 17 ll.15-18. This court specifically allowed testimony on Dr. Smolko's use of prescribed OxyContin, to be introduced at trial. N.T. 5/6/09, p. 24 ll. 13-25. This court also specifically denied the use of Dr. Smolko's loss of his medical license at trial. N.T. 5/6/09, p. 27 ll. 15-16. As to the use of the word addict we stated "Now, listen, if he comes in and denies stuff like that it can come in on cross-examination we understand, but his use of the prescription drug I'll allow it to be probed without indicating that it was an addiction and you can go into the fact whether it was used in accordance with the prescription and things like that; all right." N.T. 5/6/09, p. 27 ll. 19-25.

During the plaintiffs' case in chief Dr. Smolko was called to testify. It is this interaction between plaintiffs' counsel and Dr. Smolko, which defendants assert violated this court's in limine ruling. Plaintiffs' counsel

inquired into Dr. Smolko's use of OxyContin and then asked whether OxyContin was an addictive drug and whether Dr. Smolko was addicted to OxyContin. As soon as plaintiffs' counsel asked Dr. Smolko if he was addicted to OxyContin defense counsel objected and this court sustained the objection. Plaintiffs' counsel then finished their examination of Dr. Smolko and the jury was dismissed for lunch. Immediately following the jury's dismissal defense counsel moved for a mistrial and this court denied the request. This court offered to give a curative instruction, to which defense counsel declined. N.T. pp. 105 to 116.

First, we find plaintiffs' counsel argument that defendants waived this issue[2] to be disingenuous. Defense counsel immediately objected to the questioning of Dr. Smolko about his addiction to OxyContin, and then moved for a mistrial at the first trial break. Both parties were aware the court was going to recess for lunch at the conclusion of plaintiffs' examination of Dr. Smolko. N.T. p. 105 l. 1. The trial break at which defense counsel moved for a mistrial was immediately following Dr. Smolko's examination by the plaintiffs. Therefore, defense counsel timely and specifically moved for a mistrial and filed post-trial motions, as required. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 471, 756 A.2d 1116, 1124 (2000).

Plaintiffs' counsel's question to Dr. Smolko asking "Did you become addicted to OxyContin?" was a violation of this court's in limine ruling, thereby meeting the first prong of the two-prong test, whether a mistake oc-

---

2. The issue of whether plaintiff's counsel's use of the word addict violated this court's in limine ruling.

curred at trial. Therefore, we must determine if the mistake was prejudicial to the moving party or merely harmless error.

When a trial court reviews a motion for a new trial the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the verdict winner. *Hohns v. Gain,* 806 A.2d 16, 19 (Pa. Super. 2002); *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002). A trial judge enjoys broad powers and discretion in the handling of alleged prejudicial remarks made during argument and the trial court's charge to the jury may serve to counter any prejudice that may arise from counsel's remarks. *Daddona v. Thind,* 891 A.2d 786, 809 (Pa. Commw. 2006). "While remarks by counsel may constitute grounds for a mistrial, such remarks must be beyond correction by any admonition which the court may give the jury. (citation omitted) In deciding whether the remarks are beyond correction, we must look at the totality of the circumstances and whether the offending statements were cut short by opposing counsel before serious damage was caused." *Id.* at 810.

"[A] new trial is not required where the remarks made by counsel were neither inflammatory nor prejudicial." *Mansour v. Linganna,* 787 A.2d 443, 449 (Pa. Super. 2001). "However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint." *Young v. Washington Hospital,* 761 A.2d 559, 562 (Pa. Super. 2000).

In *Poust v. Hylton,* 940 A.2d 380 (Pa. Super. 2007), the Superior Court held that the trial court's denial of plaintiffs' request for a mistrial was an abuse of discre-

tion when defense counsel used the word cocaine, in violation of a court order, during cross-examination of a witness. In *Poust,* the plaintiffs had filed a motion in limine to preclude defense counsel from using the word cocaine, with reference to plaintiffs' decedent. During cross-examination of plaintiffs' witness, defense counsel specifically asked the witness a question referencing cocaine in the decedent's system. Plaintiffs' counsel objected and the trial court sustained the objection. A side-bar was held were plaintiffs' counsel requested a mistrial. At some point later in that same day of trial, the court denied plaintiffs' request for a mistrial and decided a curative instruction would not be given.

The Superior Court in *Poust* stated, "The grant of a motion in limine is a court order that must be observed. To allow appellee's counsel to violate such a court order, without the declaration of a mistrial, as was immediately sought by appellant's counsel here, would defeat the intended purpose of such orders." 940 A.2d at 385. The Superior Court went on to state, "The trial court clearly abused its discretion in failing to grant the requested relief of a mistrial, which should have been granted to appellant immediately at the time that the court order was violated by defense counsel." *Id.* Further, the court stated, "Under Pennsylvania law, appellant was entitled to the declaration of a mistrial, ipso facto, immediately upon appellee's counsel's flagrant and intentional use of this obviously prejudicial word 'cocaine', in violation of the prior pretrial preclusion order of the trial court." *Id.*

The case sub judice is factually similar to *Poust.* Plaintiffs' counsel violated this court's in limine ruling that

they could not refer to Dr. Smolko's use of OxyContin as an addiction. Plaintiffs' counsel flat out asked Dr. Smolko "Did you become addicted to OxyContin?" N.T. 5/6/09, p. 106 l. 19. As such, under the precedent set by the *Poust* case we must grant defendant's motion for a mistrial. The word addict in the present situation is as prejudicial as the use of the word cocaine in the *Poust* case. Just as in *Poust,* the word was uttered during counsel's cross-examination of a witness and immediately objected to. While the offending remarks were cut short, the totality of the circumstances renders the mere use of the word addict prejudicial.

The defendants had sought and obtained an in limine ruling excluding the questioning of Dr. Smolko on his addiction to OxyContin. A court order should not be violated. Plaintiffs' counsel had the opportunity to request a side-bar to revisit this court's ruling on the admissibility of Dr. Smolko's addiction to OxyContin. Instead plaintiffs' counsel felt they had a right to violate this court's in limine ruling because in their opinion Dr. Smolko was being uncooperative and untruthful about his use of OxyContin. Plaintiff does not have the right to unilaterally decide to disregard in limine rulings, if such were the case then what would be the point of seeking in limine rulings, and where would be the force in a court's order?

Plaintiffs' counsel had other options available to them but instead choose to violate this court's order. This intentional violation enhances the prejudicial nature of counsel's action because it shows a disregard for a prior exclusionary ruling of the court, a ruling which the parties had relied upon in formulating their trial strategy.

See *Commonwealth v. Padilla,* 923 A.2d 1189, (Pa. Super. 2007) (a ruling on pretrial motion in limine provides counsel with a basis upon which to structure trial strategy).

Further, use of the word addict is beyond harmless error and requires the granting of a new trial. Black's Law Dictionary defines addict as "a person who habitually uses a substance." Black's Law Dictionary (8th ed. 2004). Webster's Dictionary defines addict as "one who habitually uses and has an uncontrollable craving for an addicting drug." Webster's Third New International Dictionary, copyright 1993. Addiction is defined as "the compulsive uncontrolled use of habit forming drugs beyond the period of medical need or under conditions harmful to society." *Id.*

These definitions illustrate both the stigma and the prejudice the words addict or addiction carries with them. Once a witness, or person, is given this label the stigma can overshadow all other aspects of their testimony. The visceral effect the word has on a jury makes it impossible for them to reach a verdict based on the evidence and not on a personal bias or prejudice. "[O]nce the skunk is in the box, the odor is ineradicable." *Commonwealth v. Padilla,* 923 A.2d at 1196.

Therefore, viewing the evidence in the light most favorable to the verdict winner, we are left to conclude that a mistake occurred at trial and the mistake was more than mere harmless error. It was highly prejudicial to the defense. As such, a new trial must be granted to rectify the injustice that would result if the verdict were left to stand.

## CONCLUSION

After evaluating the arguments of both parties it is the conclusion of this court that defendants' post-trial motion for a new trial should be granted. There are certain instances where the comments of counsel are beyond correction by curative instructions. *Young v. Washington Hospital,* 761 A.2d 559, 562 (Pa. Super. 2000). This court initially offered to give a curative instruction and defense counsel declined. However, upon further review of the precedential case law we are left to conclude defendant's prejudice exceeded the ability of the court to reverse plaintiffs counsel's mistake with a curative instruction. Motions in limine orders are court orders that must be observed. They should not be intentionally disregarded. To allow an intentional violation of a court's order without consequences would emasculate the prior court order and render it irrelevant. Parties would not need to go through with the motion in limine process if the orders were not to be upheld by the court. Further, the prejudicial effect the word addict has on the jury is incurable. This is especially so given the facts and circumstances of our case when the defendant is a physician in possession of a DEA license allowing him to prescribe regulated substances, similar to the one he is accused of abusing. Therefore, defendant's post-trial motion for a new trial on the grounds that this court should have granted defendants' request for a mistrial upon plaintiffs' reference to Dr. Smolko's alleged addiction to OxyContin is granted. This disposition resolves the entire ease. The rest of the issues raised in defendants' post-trial motion, which the court deemed without merit, are therefore rendered moot.

An appropriate order follows.

## ORDER

And now, June 4, 2010, upon consideration of the defendants' motion, the parties' briefs, and oral argument of able counsel it is hereby ordered that defendants' post-trial motion is for a new trial is granted.