**Donald POUST, Sr., Administrator of the Estate of Darren Poust, Appellant**

v.

**Howard HYLTON, as S.L.H.W. Trucking Fleet 001 and Paige Anderson, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2007.

Filed Dec. 10, 2007.

Reargument Denied Feb. 15, 2008.

Shanin Specter and Charles L. Becker, Philadelphia, for appellant.

Veronica W. Saltz, Wayne, for Hylton, appellee.

BEFORE: DANIELS, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY DANIELS, J.:

¶ 1 Appellant, Donald Poust, Sr., appeals from the order of the trial court, entered on November 15, 2006, denying Appellant's post-trial motion seeking a new trial because of the trial court's failure to grant Appellant's motion for a mistrial. Appellant's motion for a mistrial was made during trial because of the flagrant and intentional violation by defense counsel of a pretrial order of the trial court, precluding defense counsel from referencing the word "cocaine" with respect to Appellant's decedent during the presentation of evidence at trial. For the following reasons, we reverse the order of the trial court below, and we remand for a new trial as to both the issues of liability and damages.

### PROCEDURAL AND FACTUAL BACKGROUND OF CASE

¶ 2 In its post-trial opinion, the trial court below related the following procedural and factual background of this case, without specifically addressing the pivotal issue raised by Appellant in support of his motion for a new trial—namely, that the trial court erred in failing to declare a mistrial upon the motion of Appellant's counsel during the course of the trial:

> [Appellant], Donald Poust, Sr., Administrator of the Estate of Darren Poust ... filed an appeal from [the trial court's] Order of November 15, 2006, denying Appellant's Post–Trial Motions for a new trial. [The trial court] did grant Appellant's Motion to Mold the Verdict to add delay damages in the amount of $7089.01 against [Appellee's] Howard Hylton, as S.L.H.W. Trucking Fleet 001 and Paige Anderson....

This negligence action was brought by Appellant for damages resulting from the death of [Appellant]'s decedent. [Appellant]'s decedent's death arose from a tractor trailer accident with decedent, who was a bicyclist at the time of the November 2003 accident. At the time of the accident, Appellee Hylton's tractor trailer was passing a double-parked car owned by co-defendant, Paige Anderson. [Appellant]'s decedent was caused to fall underneath the right rear wheels of the tractor trailer operated by [Appellee], Hylton. [Appellant]'s decedent died as a result of the injuries sustained in this accident. Thereafter, Appellant filed suit against Appellees Hylton and Anderson pursuant to Pennsylvania's Wrongful Death and Survival Acts. It should be noted that prior to trial, Appellant settled with Defendant, Anderson.

The trial in the matter began on November 29, 2005 and concluded with a jury verdict on December 9, 2005. The testimony at trial was hotly contested between the parties with the presenta-

tion of only one live witness to the tragic accident, Juan Mendoza. Philadelphia police officers who arrived at the scene following the accident also testified both live and via deposition testimony. Further, both sides presented liability experts and economic experts. During trial, [Appellant] sought damages under both the Survival Act and Wrongful Death Act. Under the Survival Act, [Appellant] sought damages for any pain that the decedent Poust may have experienced prior to his death, as well as any lost earning capacity. Under the Wrongful Death Act, Appellant sought damages relating to the medical bills incurred during decedent's last illness, as well as for funeral and burial costs. Following trial, the jury returned their verdict finding [Appellee] Hylton, 15% negligent, Defendant, Anderson, 45% negligent and [Appellant's] decedent, 40% negligent. The jury awarded damages in the amounts of $366,190.12 and $525,000.00, under the Wrongful Death Act and Survival Act, respectively.

On December 19, 2005, Appellant filed both a Motion for a New Trial and a Motion to Mold the Verdict to Add Delay Damages. By Order of November 15, 2006, this Court granted Appellant's Motion to Mold the Verdict To Add Delay Damages, but denied his Motion for a New Trial. On December 12, 2006, [Appellant] file an Appeal of this Court's Order of November 15, 2006. By Order dated January 3, 2007, [Appellant]was Ordered to file and submit to [the] Trial Court a Concise Statement of Matters Complained Of On Appeal. On January 11, 2007, [Appellant] filed his Statement of Matters Complained Of On Appeal.
Trial Court Opinion, 5/30/07, pp. 1–3.

### QUESTION PRESENTED ON APPEAL

¶ 3 Appellant presents only one question for our review on this appeal:

Did the trial court err in failing to declare a mistrial after defense counsel violated a Court Order by introducing evidence of the decedent's cocaine use, and should a new trial on both liability and damages be granted as a result?

Appellant's Brief, p. 5.

¶ 4 The trial court answered this question in the negative. We do not agree.

### STANDARD OF REVIEW

¶ 5 Our standard of review in the consideration of the denial of a motion for a new trial by a trial court is to assess and determine whether or not the trial court abused its discretion in denying such a motion. *Commonwealth v. Padilla*, 923 A.2d 1189 (Pa.Super.2007). And, as we have stated in *Commonwealth v. Busanet*, 572 Pa. 535, 817 A.2d 1060 (2002):

An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record."

*Id.* at 1192, 817 A.2d 1060. (Citations Omitted).

¶ 6 In that regard, the Supreme Court of Pennsylvania has observed, in addressing prejudicial remarks, that "where the remark is obviously prejudicial, it is an abuse of discretion for the court below to refuse a new trial." *Stevenson v. Pa. Sports & Enters., Inc.*, 372 Pa. 157, 93 A.2d 236 (1952).

### DISCUSSION

¶ 7 In the instant case, Appellant filed a motion in limine to specifically pre-

clude defense counsel from mentioning the word "cocaine" with reference to decedent during the course of the trial. Motion in Limine, 10/24/05, pp. 1, 3–4. The trial court granted such motion by order dated November 30, 2005 and entered on December 13, 2005. In violation of the trial court's order, however, Appellee's counsel, on cross-examination of Appellant's treating physician witness, Dr. Wayne Ross, asked the following question to which Appellant's counsel promptly objected:

*Dr. Wayne Ross—Cross Examination:*

> MS. SALTZ: Now, doctor, **in your report, the fact that he had a cocaine metabolite in his system, does that have any effect on**—
>
> MR. CASEY: **Objection**
>
> MS. SALTZ:—his pain
>
> MR. CASEY: **Objection**
>
> THE COURT: **Sustained**
>
> MR. CASEY: We have to see you at sidebar.
>
> THE COURT: No, we don't. Let's continue.
>
> MR. CASEY: Your Honor.
>
> THE COURT: I know. Let's continue

. . .

(AT THIS TIME THE JURORS LEFT THE ROOM AT 11:23 A.M.)

. . .

MR. CASEY: Your Honor, as the Court and counsel knows there was extensive argument on this issue pretrial and there was a motion in limine on it. **The Court ruled that there was to be no mention of cocaine from any of the witnesses and certainly that would include any gratuitous mention of it in a question to a witness.**

Additionally, **this defendant has produced no expert testimony of any kind to suggest that there would be any scientific basis for the inclusion of a mention of cocaine. But the fact of the matter is that the Court ruled on it, it was clear. It is enormously prejudicial to the Plaintiff's case for rather obvious reasons. It has zero probative value to the issues being litigated here.**

And at this point, *Plaintiff moves* the Court for a *mistrial.*

. . .

THE COURT: What was the whole purpose of the [Appellant's] motion to exclude and preclude evidence of cocaine and prior arrests? That was the whole motion.

MS. SALTZ: Prior arrests, correct. And the use of cocaine. **We weren't saying he was using cocaine.**

THE COURT: **Hold on. Let's not be, you know, get into areas where we're kidding each other.**

You're telling me then that the prior ruling to exclude the evidence of cocaine was wrong?

MS. SALTZ: No, Your Honor. I'm not saying that at all. What I'm saying—

THE COURT: **Well, what are you saying? Because I told you don't bring it up.**

. . .

MR. CASEY: ... **The motion in limine was prepared for trial. We asked to preclude every reference to cocaine from any witness,** number one.

. . .

We then filed a motion in limine. **The Court ruled clearly that there was to**

be no mention anywhere of cocaine. The proposed order said that plaintiff's motion was to preclude any evidence regarding cocaine . . .

But it is devastating to the Plaintiff's ability to present their case. It was done so, I submit respectfully to counsel, intentionally to force what they're going to have now, which if plaintiff's motion is granted, which is a mistrial, it was done intentionally and in flagrant violation of the Court's order on this subject.

. . .

THE COURT: Let me ask, what are my options? You're requesting a motion for mistrial which ends this trial, if that's what I've decided.

And what are the other options?

. . .

MR. CASEY: Well, just for the sake of argument, I **don't believe under the circumstances that any curative instructions would have any effect, because the word cocaine is inflammatory just by its utterance.** Counsel knows that. And **I don't believe that given the issues here,** it has a—a curative instruction has the capacity to resolve the problem.

The other alternative would be to grant [Appellant's] motion for a directed verdict against defendant Hylton and a sanction for the violation of the order.

At the moment I may need a few minutes to think about it. That's all I can think of, Your Honor.

THE COURT: Me, too.

(N.T. 12/05/05, Morning Session, pp. 51–63) (Emphasis Added).

¶ 8 Thereafter, later in the day, the trial court denied Appellant's counsel's motion for a mistrial and declined to give any curative instruction to the jury for the following reasons:

THE COURT: Okay. I thought about this. You know, sometimes when something is brought up that is totally in violation of either the Court rule or it is inflammatory to the point where it could be more or in this case maybe is more prejudicial than probative, there are issues with it giving it any kind of curative instruction because then it reminds or puts the thought back into the minds of the jury, and in this case the jury because we're supposed to strike it out of our minds and we're professionally trained and we hardly can do that at times.

. . .

Let me say this. You probably opened yourself up for a problem at some point by doing that. I don't know how the jury is going to perceive it, but because I have, how should I say, the power to review things post-trial areas, you know, I don't think I'm going to come to a decision on this today and **I don't think I want to give a curative instruction. I probably will deny the motion for mistrial and let the trial proceed and at this point I'll leave it at that and I'll note your exceptions.**

MR. CASEY: Meaning there would be no curative instruction before the jury deliberates?

THE COURT: I don't want to mention it again because I don't know how they're going to perceive it and you could raise that up at a later date.

MR. CASEY: Okay.

THE COURT: I mean that's the only thing I can think of. If I mention it again, it could be worse and it may even hurt plaintiff's case in a way that they don't want and that's just what I'm saying.

MR. CASEY: I understand and I respect the Court's ruling and I know it's late in the day, we'll all go home. The last thing I want to say on this record, it is inescapable that it was an intentional thing. There is no reasonable conclusion that anybody who was here would come to and that's the only thing, the only final point I wanted to make about it.

(N.T. 12/5/05, Afternoon Session, pp. 156–58) (Emphasis Added).

■ ¶ 9 Thus, in the instant case, Appellant's counsel specifically obtained a pretrial order of the court, precluding any mention of the word "cocaine" during the trial. However, despite the court's order to that effect, Appellee's counsel violated that court order on her cross-examination of Dr. Ross. We find this conduct and tactic by defense counsel to have been totally unprofessional and a flagrant and intentional disregard of such order, which should not and cannot be tolerated. The grant of a motion in limine is a court order that must be observed. To allow Appellee's counsel to violate such a court order, without the declaration of a mistrial, as was immediately sought by Appellant's counsel here, would defeat the intended purpose of such orders. Why would counsel ever bother filing such a motion if opposing counsel were free to blithely ignore it without the court's affording any relief to the offended party by way of the grant of a mistrial upon proper application?

■ ¶ 10 Appellant here argues that the trial court erred in failing to declare a mistrial when Appellee's counsel violated the court order in question. We agree. The trial court clearly abused its discretion in failing to grant the requested relief of a mistrial, which should have been granted to Appellant immediately at the time that the court order was violated by defense counsel. In her violation of this pre-trial order of the court, Appellee's counsel clearly uttered the word "cocaine", which Appellant had sought to preclude due to the potentially prejudicial effect of the mention of that word in front of the jury. Under Pennsylvania law, Appellant was entitled to the declaration of a mistrial, ipso facto, immediately upon Appellee's counsel's flagrant and intentional use of this obviously prejudicial word "cocaine", in violation of the prior pre-trial preclusion order of the trial court. *See Stevenson, supra; Commonwealth. v. Sargent,* 253 Pa.Super. 566, 385 A.2d 484 (1978), *see also Narciso v. Mauch Chunk Twp.* 369 Pa. 549, 87 A.2d 233 (1952), and *Mittleman v. Bartikowsky,* 283 Pa. 485, 129 A. 566 (1925). For, as we have made abundantly clear in *Commonwealth v. Francis,* 445 Pa.Super. 353, 665 A.2d 821 (1995), a new trial is to be granted where:

> the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. **If [counsel's] misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.**

*Id.* at 824 (Citations Omitted and Emphasis Added).

¶ 11 The circumstances in the case at Bar involve issues that are strikingly similar to those that we addressed in *Siegal v. Stefanyszyn,* 718 A.2d 1274 (Pa.Super.1998), where we were faced with the question of "whether the trial court erred in denying [Appellant's] request for a new trial despite defense counsel's misrepresentations to the jury during closing arguments...." *Id.* at 1275. During the course of that trial, in which a claim for medical malpractice was asserted, counsel for the defendant-doctor made a motion to

preclude one of plaintiff's treating physicians from expressing any opinion with regard to the defendant's alleged medical malpractice. Such motion was granted by the trial judge, and plaintiffs limited their questions to that medical witness to factual matters, not involving the expression of any expert medical opinion as to whether the defendant-doctor's conduct in treating the plaintiff conformed to the minimum standard of medical care required in such treatment of plaintiff. Nevertheless, in his closing remarks to the jury, defense counsel misrepresented the facts to the jury, as follows, as we referenced in our opinion in *Siegal:*

> [D]espite the fact that Dr. Shore was precluded from testifying because of appellees' motion, appellees' counsel made the following outrageous argument during his closing argument:
>
>> But you know; if Mary Stefanyszyn— They really felt that Mary Stefanyszyn had committed malpractice or did not get informed consent, you would have heard that from our friend Dr. Shore. He [Dr. Shore] was the operating surgeon ... He came down here. And they limited him to CAT scans, for which he's not an expert. Came down to testify to CAT scans.
>>
>> * * * *
>>
>> Do *you think* if John *Shore really* felt that *Mary Stefanyszyn* had *done something wrong* that *Richard Siegal would* let *him walk* out of *this courtroom without saying* so? The *answer* is no.
>
> N.T., April 4, 1996, pp. 88–89.
>
> Appellants' counsel immediately objected to this argument, and the objection was sustained; however, no immediate curative instruction was given.

*Id.* at 1276 (Emphasis Added).

¶ 12 In the face of this misrepresentative argument by defense counsel in *Siegal,*

this Court made the following observations, which are particularly relevant and germane in the instant case:

> Whether remarks by counsel warranted a new trial requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the court and counsel to prevent such remarks from having a prejudicial effect. It is the duty of the trial judge to take affirmative steps to attempt to cure harm. **However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint.**

*Id.* at 1277 (Emphasis Added) (Citations Omitted).

¶ 13 Here, in violating the trial court's order and uttering the prejudicial word "cocaine," Appellee's counsel tainted the entire judicial proceeding in this matter. Such conduct compromised the ability of Appellant (as the representative of the decedent's estate) to receive a fair trial. The trial court below recognized the prejudicial effect of Appellee's counsel's use of the word "cocaine" when it failed to give a curative instruction for fear of drawing further attention to this highly prejudicial word, as follows:

> THE COURT: Okay. I thought about this. You know, sometimes when something is brought up that is totally in violation of either the Court rule or it is inflammatory to the point where it could be more or in this case maybe is more prejudicial than probative, there are issues with it in giving it any kind of curative instruction because then it reminds or puts the thought back into the minds of the jury ...

(N.T. 12/05/05, Afternoon Session, pp. 156).

¶ 14 Despite acknowledging that the use of the word "cocaine" could not be obliterated from the minds of the jurors, the trial court below failed to provide Appellant with any relief whatsoever by way of the declaration of a mistrial as Appellant's counsel had immediately requested at that juncture of the trial, when the trial court's pre-trial order was intentionally violated by defense counsel. Nor was defense counsel admonished at that point time by the trial court. The grant of a mistrial was required in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law. Here, as was observed by Appellant's counsel below, it is abundantly clear that no curative instruction could have obliterated the taint of defense counsel's use of the word "cocaine" in her cross-examination of Dr. Ross. (N.T. 12/05/05, Morning Session, p. 63). Our following observations in *Siegal* ring true and are particularly appropriate in the instant matter:

> [T]he outrageousness of appellee counsel's comments and conduct was such as to make it almost impossible for the trial judge to undo the harm. As to the latter point the comments of the late Justice Green of the Pennsylvania Supreme Court, though penned more than a century ago, still ring true:

> > The comments of counsel complained of were of the most offensive and reprehensible character, not sustained by any evidence in the cause and justly deserving the severe censure of the court. We can discover nothing to palliate them in the least degree, and *inasmuch* as *there* was no *other efficacious remedy available* to *correct* the *mischief* done, it *was* the *plain duty* of the *court* to *withdraw* a *juror* and *continue* the *cause [resulting* in a new *trial].* **Many judges are in the habit of doing this upon proper occasion, and that *practice deserves* to be *widely extended,* so that counsel who indulge in the habit of making such comments, may be properly admonished that they cannot do so except at severe cost to their clients and themselves.**

> *Holden v. Pennsylvania Railroad Co.,* 169 Pa. 1, 18, 32 A. 103 (1895).

*Siegal, supra* at 1277 (Emphasis Added).

¶ 15 Thus, in the words of our conclusion in *Siegal:*

> [Appellee's] counsel's reference to [the word "cocaine"] was improper and outrageous and so polluted the jury that the effect could not be cured by [a] curative instruction .... [and t]herefore we are compelled to conclude that it was error for the trial court to deny appellant's request for a new trial.

*Siegal, supra* at 1277 (Emphasis Added).

### *CONCLUSION*

¶ 16 The trial court below abused its discretion in failing to grant a mistrial to Appellant upon the motion of counsel for Appellant immediately upon defense counsel's flagrant and intentional violation of the trial court's pretrial preclusion order. Accordingly, we find that Appellant is entitled to a new trial as to the issues of both liability and damages because of the prejudicial effect upon Appellant of the trial court's ruling denying his request for the award of a new trial.

¶ 17 Order reversed. Judgment vacated. Remanded for a new trial as to both liability and damages. Jurisdiction relinquished.