**Nika v. Schelkun**

*Peter J. McNamara,* for plaintiff.

*Gary V. Gittleman* and *Thomas A. McCormack,* for defendants.

ALBRIGHT, *J.,* July 26, 2010—The plaintiff, Jannina Nika, appeals from this court's order, dated December 31, 2009,[1] denying the plaintiff's motion for post-trial relief. For the reasons that follow, the undersigned believes that the order should be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

This medical/dental malpractice lawsuit arises out of the alleged negligence stemming from both the oral surgery performed upon Jannina Nika and her subsequent post-operative treatment. The defendants, Dr. P. Michael Schelkun and Dr. Michael T. Dachowski, completed Ms. Nika's initial surgery on October 22, which was followed by a second surgery by Dr. Schelkun who thereafter oversaw much of the plaintiff's post-operative care and treatment.

During the course of the three-week trial that occurred in the fall of 2008, the court heard approximately five hours of testimony from defendant Schelkun's expert witness, Dr. Raymond J. Fonseca. While testifying, Dr. Fonseca discussed two issues which plaintiff's counsel argued constituted grounds for a mistrial and have now become the central focus of his *client's* appeal. (N.T. 11/10/08, first afternoon session, at 3-13.) According to the plaintiff, the first basis for mistrial concerned Dr.

---

1. The order appealed from was docketed on January 4, 2010.

Fonseca's allegedly deliberate violation of the court's order prohibiting the doctor from criticizing the plaintiff's expert, Dr. Decidue, and blaming Dr. Decidue's subsequent treatment for the plaintiff's post-surgical and present "complications." (N.T. 11/10/08, morning session, at 92-94; N.T. 11/10/08, second afternoon session, at 3.) The plaintiff's second ground for mistrial arose when Dr. Fonseca gratuitously offered that he had previously testified in a case against the plaintiff's expert witness, Dr. Streck. (N.T. 11/10/08, first afternoon session, at 124-25; N.T. 11/10/08, second afternoon session, at 3.)

Following the allegedly inappropriate comments by Dr Fonseca and outside the presence of the jury, the plaintiff's attorney verbally moved for a mistrial, arguing that Dr. Fonseca's discussion of both Dr. Decidue's purported breach of the standard of care and Dr. Fonseca's statement that he had testified "against [the plaintiff's expert,] Dr. Streck" constituted grounds for mistrial. (N.T. 11/10/08, second afternoon session, at 3; N.T., 11/10/08, first afternoon session, at 124-25.) The undersigned denied the plaintiff's motion after concluding that neither of the bases set forth in support of her request warranted the granting of a mistrial. (N.T. 11/10/08, second afternoon session, at 10, 13; N.T. 11/10/08, first afternoon session, at 124-26.) The trial proceeded to its conclusion when, on November 14, 2008, the jury returned a verdict in favor of the defendants.

On November 21, 2008, the plaintiff filed a motion for post-trial relief, requesting that the judgment entered in favor of the defendants be vacated and a new trial

granted.[2] In her motion, the plaintiff claimed the trial court erred by denying her motion for mistrial. On December 31, 2009, following a much delayed briefing schedule and argument, the undersigned denied the plaintiff's motion for post-trial relief. The plaintiff's timely appeal ensued, and, in response to the trial court's Pa. R.A.P. 925(b) request, Ms. Nika filed and served upon the undersigned the following statement of matters complained of on appeal (Pa. R.A.P. "1925(b) statement"):[3]

"(1) Plaintiff Jannina Nika complains that the trial court committed error when it refused to declare a mistrial when requested by plaintiffs counsel during trial.

"(2) Plaintiff Jannina Nika contends that the trial court committed error when it refused to order a new trial when considering the post-trial motions especially in light of the language used by the trial court during the argument held at the time the mistrial was requested.

"(3) Plaintiff complains that it was error when the court failed to declare a mistrial or a grant a new trial when the court was considering the misconduct committed not only by defendant's expert witness (Dr. Fonseca), but also by defendant's counsel, specifically the references by defendants' expert about his testifying in a case where plaintiffs expert, Dr. Streck, was a defendant.

"The error consisted of Dr. Fonseca gratuitously and prejudicially telling the jury that he was an 'expert

---

2. Argument on the plaintiff's motion for post-trial relief was not scheduled until more than a year after its filing as a result of the plaintiff's delay in retaining appellate counsel.

3. Transcribed exactly as submitted by the appellant.

against Dr. Streck' (11/10/08, p. 125-26.) Additionally, this prejudicial statement was compounded by the statement of defendant's counsel, Mr. Gittleman, when he prejudicially added 'he (Dr. Fonseca) was telling about a case he testified against Dr. Streck.' (11/10/08, p. 126.)

"(4) Plaintiff contends that it was error for the trial court to refuse to grant a new trial or declare a mistrial when faced with the testimony of defendants' expert, Dr. Fonseca, when he blatantly violated the courts order about not criticizing plaintiffs' treating doctor.

"(5) Plaintiff contends that it was error for the trial court to refuse to declare a mistrial and to refuse to grant a new trial when considering the post-trial motions, in light of the fact that Dr. Fonseca specifically violated the court's order and testified outside the scope of his expert report. The records show that the court had a colloquy with Dr. Fonseca (in the presence of counsel) outside the hearing of the jury on the nature of Dr. Fonseca' s testimony and whether he could criticize Dr. Decidue, one of plaintiffs treating physicians. The court specifically gave Dr. Fonseca instructions and the doctor blatantly disregarded the court's rulings.

"(6) Plaintiff complains that that conduct was unfairly prejudicial and that the prejudice could not be corrected or rectified. The defendants and their expert crossed the line and since the defendants have characterized this case as a "battle of the experts", prejudicial conduct should have resulted in a mistrial when requested and/or a new trial when considering post-trial motions.

"(7) Plaintiff contends that the trial court committed error by failing to use the proper standard when considering a mistrial and improperly considered the time that had already been put into the case ahead of the plaintiffs right to a fair trial.

"When considering Dr. Fonseca's testimony and the request for a mistrial, the court noted that the conduct was 'wrong'. The court went on to add that the issue was preserved on appeal. The court then considered the time spent in the trial, rather than legal basis that should be considered when a mistrial has been requested. The court's concern about the time spent and length of trial are evidence by the court's language as follows:

" 'but at this stage, with the commitment that you have all made to the case, I think it is more important that we finish it. And than let the jury make its decision. We will take things as they come.'

"(8) Plaintiff contends that the trial court committed error when the court refused to grant plaintiff a new trial when plaintiff again raised these issues at the post-trial level. The court was reminded of the fact that the court knew the defendant's expert's conduct was wrong, and plaintiff complains that the court did not correct this error by granting a new trial."

## DISCUSSION

The standard of review pertaining to a trial court's denial of a motion for mistrial is "to assess and determine whether or not the trial court abused its discretion in denying such a motion." *Poust v. Hylton,* 940 A.2d 380, 382 (Pa. Super. 2007). (internal citation omitted) "An

abuse . . . exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Graham v. Campo,* 990 A.2d 9, 13 (Pa. Super. 2010). The trial court has broad discretion when deciding to grant a new trial and should do so only when "the unavoidable effect of the conduct or language [used] was to prejudice the factfinder to the extent that the fact-finder was rendered incapable of fairly weighing the evidence and entering an objective verdict." *Poust v. Hylton,* 940 A.2d 380, 385 (Pa. Super. 2007). In addressing prejudicial remarks, the Supreme Court of Pennsylvania has observed that only where "the remark is obviously prejudicial" should the trial court grant a new trial. *Poust,* 940 A.2d at 382. Indeed, all of the evidence should be viewed in the light most favorable to the verdict winner to determine if a new trial might produce a different verdict. *Haddad v. Gopal,* 787 A.2d 975 (Pa. Super. 2001).

Despite the plaintiff's lengthy 1925(b) statement, Ms. Nika essentially presents two issues for appellate review, namely: (1) that the trial court erred in denying her motion for mistrial based upon Dr. Fonseca's violation of the undersigned's instruction precluding him from testifying outside the scope of his expert report and blaming Dr. Decidue for the plaintiff's complained of surgical complications and post-operative treatment, and; (2) that the trial court erred in denying Ms. Nika's motion for mistrial based upon Dr. Fonseca's that he had previously testified "against Dr. Streck."

A. *The Trial Court Correctly Denied the Plaintiff's Motion for Mistrial Based on Dr. Fonseca's Alleged Violation of the Undersigned's Order Prohibiting Him From Giving Testimony Critical of Dr. Decidue's Subsequent Treatment of the Plaintiff and Opining That He Was in Some Way Responsible for Her Post-Surgical Complications and Complaints*

In addressing the merits of the plaintiff's first contention of error, it is well-settled that a new trial is appropriate only where the trial court has abused its discretion or committed an error of law. In this case, the undersigned denied the plaintiff's motion for mistrial after determining that Dr. Fonseca's testimony regarding Dr. Decidue's treatment would not have the "unavoidable effect" of prejudicing the jury to the extent that they would be rendered incapable of reaching an objective verdict based upon the evidence already presented in this ease which had by now been through approximately six days of trial. See *Poust,* 940 A.2d at 382-85.

Unlike the relatively benign though arguably somewhat brazen conduct of Dr. Fonseca, which was entirely uncalled for in his thinly disguised attempt to assign blame or responsibility for the plaintiff's surgical and post-surgical care difficulties to her treating physician, Dr. Decidue, reference to the case of *Poust v. Hylton,* where the offending, prejudicial remarks necessitated the granting of a new trial is instructive. *Id.,* 940 A.2d 380. The *Poust* matter involved a wrongful death and survival action brought by the decedent's estate following his being struck and killed by an automobile driven by the defendant. *Id.* In *Poust,* the appellate court held

that the trial court had abused its discretion in denying the plaintiff's motion for a new trial, based on defense counsel's flagrant and intentional violation of a pretrial order. *Id.* at 385. In that case, the trial court precluded defense counsel from mentioning the word "cocaine" with reference to the decedent during the course of the trial. *Id.* at 383. Despite the trial court's order, on cross-examination of the plaintiff's treating physician, defense counsel referenced the fact that the doctor's report indicated that the decedent had "cocaine" in his system. *Id.* at 383. Plaintiff's counsel moved for mistrial and the trial court denied the motion. The appellate court reversed the trial court after determining that it had abused its discretion, concluding that defense counsel's deliberate violation of the pretrial order and obviously prejudicial conduct "contributed to the verdict," which was subsequently rendered in favor of the defendant, thereby meriting the grant of a new trial. *Id.* at 385.

In this case, plaintiff's counsel contends that Dr. Fonseca "deliberately disobeyed" the undersigned's instruction to him that he was "not permitted to give any expert testimony regarding the standard of care provided the plaintiff by her treating physicians [including, Dr. Decidue]" because his report did not address that topic. (11/10/08, second afternoon session, at 3; 11/10/08, morning session, at 92-93.) The trial court instructed Dr. Fonseca as follows, "[w]hat you are permitted to address in response to Mr. Gittleman's inquiry . . . is that which concerns Dr. Decidue's notes, comments, regarding the plaintiff's condition or conditions, her symptoms that he noted . . . And you will be able to reference back as to whether or not any of those symptoms, any of those

conditions, any of those problems noted by Dr. Decidue, were as the result of any breach in the standard of care provided by either Dr. Schelkun or Dr. Dachowski." (N.T. 11/10/08, morning session, at 93.)

According to the plaintiff, the allegedly inadmissible testimony regarding Dr. Decidue's treatment first occurred during Mr. Gittleman's direct examination of Dr. Fonseca. (N.T. 11/10/08, morning session, at 71-72.) At the time, Mr. Gittleman referenced testimony by Dr. Decidue that, in his opinion, the plaintiff had developed an "oral anthral fistula in her upper jaw" as a result of Dr. Schelkun's October 20, 1999 surgery, and then asked "[d]o you agree with that opinion?" (N.T. 11/10/08, morning session, at 72.) Dr. Fonseca responded in the negative, thus criticizing Dr. Decidue's findings and, according to plaintiff's counsel, impliedly blaming Dr. Decidue's treatment for the plaintiff's present complications. (N.T. 11/10/08, morning session, at 72-74.) Plaintiff's counsel then objected to Dr. Fonseca offering testimony critical of Dr. Decidue and the trial court overruled the objection, but cautioned Dr. Fonseca that he was "not permitted to give any expert testimony regarding the standard of care provided the plaintiff by her treating physicians [including, Dr. Decidue];" nor was he permitted to opine or relate his belief that the plaintiff's complications were "[r]easonably associated with Dr. Decidue's surgeries." (N.T. 11/10/08, morning session, at 92-93.)

Later that same day on cross-examination, Mr. Gittleman asked Dr. Fonseca "in your opinion, what was the cause of the symptoms" suffered by the plaintiff? (N.T., 11/10/08, first afternoon session, 115.) Before Dr. Fon-

seca could respond, plaintiff's counsel immediately objected. (N.T., 11/10/08, first afternoon session, 115.) This time, the trial court sustained the objection, barring Mr. Gittleman and Dr. Fonseca from further exploring the issue of whether Dr. Decidue breached the standard of care and caused the plaintiff's complications. (N.T. 11/10/08, first afternoon session, at 120.) Finally, when asked whether Dr. Fonseca had an opinion within a reasonable degree of medical certainty as to whether the plaintiff's complications were caused by Dr. Schelkun's October 20, 1999 surgery, Dr. Fonseca responded in the negative. (11/10/08, first afternoon session, at 123-24.) He further testified that, in his opinion, the complications had "nothing to do with Dr. Schelkun's surgery . . . [b]ecause these [complications] are all related to things that occur secondary to TMJ arthroscopic surgery and arthrocentesis." (N.T., 11/10/08, first afternoon session, at 124.)

Thereafter, the plaintiff's counsel moved for a mistrial, outside the jury's presence, on the basis that Dr. Fonseca had disobeyed the trial court's specific instruction and impermissibly criticized Dr. Decidue. (11/10/08, second afternoon session, at 3.) Despite Dr. Fonseca's potentially transgressive testimony, the undersigned determined that Dr. Fonseca had not offered any direct criticism of Dr. Decidue's treatment of plaintiff. Therefore, the jury was not rendered incapable of reaching a fair and objective verdict, and the plaintiff's motion for mistrial was, accordingly, denied.

After the trial, and with the plaintiff's motion for post-trial relief asserting in part, that the trial court erred when it failed to grant a mistrial based on Dr. Fonseca's testi-

mony criticizing Dr. Decidue, the undersigned had yet another opportunity to examine Dr. Fonseca's testimony. After briefing and argument on the plaintiff's motion, the trial court determined that a new trial would not likely produce a different verdict. See *Poust,* 940 A.2d at 382. Given the abundant evidence presented by the defendants at trial, the trial court concluded that the jury fairly weighed all of the evidence and determined that the defendants were not the factual cause of the plaintiff's alleged injuries. The undersigned appropriately concluded that any fleeting reference by Dr. Fonseca to potential causes of the plaintiff's complications did not, in any way, render the jury incapable of reaching an objective verdict and consequently, denied the plaintiff's motion for post-trial relief. See *Poust v. Hylton,* 940 A.2d at 385; see also, *Haddad v. Gopal,* 787 A.2d at 975 (Pa. Super. 2001).

B. *The Defense Expert's Brief Reference to His Prior Experience As a Witness Appearing Against Plaintiff's Expert Witness Did Not Warrant the Grant of a Mistrial in this Case*

In evaluating the complained-of comments made by the defendant's expert, as well as the remarks made by defense counsel, which the plaintiff asserts only exacerbated the harm already done, it is important to examine the context within which the alleged offending comments arose. The defense expert, Dr. Fonseca, was, at the time, nearing the end of his nearly five hours of often intense and exhausting testimony when, while undergoing recross-examination in the late afternoon by plaintiff's counsel, Mr. Freiwald, the following exchange took place:

"Mr. Freiwald: Dr. Fonseca, Mr. Gittleman asked you if you're testifying today on the basis of your textbooks or on the basis of your 30 years of experience as an oral and maxillofacial surgeon, do you recall that?

"The Witness: Yes.

"Mr. Freiwald: You are also testifying as somebody who has testified a lot of times as an expert, and overwhelmingly for the doctor, when you do so, correct?

"Mr. Gittleman: Objection, your honor.

"The Court: Correct. Overruled.

"Mr. Gittleman: It's beyond the scope of cross-examination, your honor.

"The Court: Overruled.

"The Witness: About 80 percent for the defense. 20 percent for the plaintiff.

"Mr. Freiwald: That's overwhelmingly.

"The Witness: *Well, I was an expert against Dr. Streck, so—*

"Mr. Freiwald: *Okay, okay.*

"Mr. Gittleman: *Let him finish his answer.*

"Mr. Freiwald: *Move to strike. Come on.*

"The Court: *He did finish his answer.*

"Mr. Gittleman: *I don't know if he finished his answer. He was telling about a case he testified against Dr. Streck.*

"The Court: *He finished his answer, Mr. Gittleman. Thank you.*

"Mr. Freiwald: Doctor, you disagree with Dr. Wolford about whether the patient should have bilateral TMJ replacement surgery. You used to work at Penn, correct?

"The Witness: Correct. I was the dean at Penn.

"Mr. Freiwald: Do you know Dr. Quinn?

"The Witness: Yes, he was my chairman of oral surgery.

"Mr. Freiwald: Do you know he recommends the same thing as Dr. Wolford?

"The Witness: Correct.

"Mr. Freiwald: Nothing further.

"The Court: Thank you, doctor. You may step down carefully. Ladies and gentlemen, we're finished for the day." (N.T. 11/10/08, first afternoon session, at 124-26. (emphasis added)

At the conclusion of Dr. Fonseca's testimony and after the jury had been sent home for the day, plaintiff's attorney moved for a mistrial based upon the witness' reference to both Dr. Decidue and Dr. Streck. As to the latter reference, Mr. Freiwald asserted, in pertinent part, that Dr. Fonseca had:

"testified gratuitously by offering that he testified against Dr. Streck in a matter which was clearly irrelevant, clearly not called for by that question and clearly designed to cause prejudicial against . . . [Dr. Streck] . . . , clearly designed by a witness clever enough and experienced enough as an expert witness to know how to sneak something in that is improper, and was done so,

once again, only to introduce prejudicial testimony in a way that I could not stop him." (N.T. 11/10/08, second afternoon session, at 3.)

While the trial court was, at the time, troubled by the witness' unsolicited reference and not-so-thinly disguised critical assessment of plaintiff's expert, Dr. Streck, the prejudice or harm done, if any, was minimal and of no particular consequence, occurring in the last week of a lengthy contested three-week-long trial. However unfortunate or inconsiderate one might view the comment made regarding Dr. Streck, it was, quite clearly, made in response to a question propounded by plaintiff's counsel. That question sought confirmation by Dr. Fonseca of his alleged history of testifying "overwhelmingly" in favor of physicians. In response, the witness admitted that, over the years, he appeared "about 80 percent for the defense, 20 percent for the plaintiff." When plaintiff's counsel, in perhaps an ill-advised attempt to emphasize or point out before the jury Dr. Fonseca's possible bias in favor of the defendants with his observation by stating "that's overwhelmingly," the witness' somewhat knee-jerk reaction, though surprising, should not have been totally unexpected. Dr. Fonseca's retort was meant simply to counter plaintiff counsel's insinuation that he was a biased or impartial witness—a "hired gun" for doctors—by assuring the jury and the trial court that he had, indeed, testified previously for plaintiff's, and on whose behalf, in one particular case, he had appeared against Dr. Streck where the latter apparently had been named as a party defendant.

The exchange between Dr. Fonseca and his interrogator was short, and the incident concluded with the trial

court's gentle, but stern admonishment to defense counsel, Mr. Gittleman, regarding his rather unwitting attempt to come to the defense of his witness—then under attack —and to explain his response and thus, perhaps, not thinking of how just a few ill chosen words might possibly compound the benign consequence of a careless response into something much worse. The entire episode lasted only "seconds" and occurred at the end of a long and tiring day in a hotly contested case that was headed into its third week of trial when emotions of the participants were running high and their tempers becoming short. In retrospect, the provocative moment was representative of nothing more than the classic give and take between a skilled lawyer and a crafty hostile witness, well-schooled and experienced in the ways of both his profession and the courtroom.

## CONCLUSION

For all of the aforementioned reasons, the trial court believes that the order, dated December 31, 2009, should affirmed.