J-A21007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL MCCARTHY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DRISCOLL CONSTRUCTION CO. INC., L.F. DRISCOLL CONSTRUCTION CO. L.L.C., | |
| V. | |
| THE NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK, | |
| APPEAL OF: DRISCOLL CONSTRUCTION CO. INC., | |
| Appellant | No. 492 EDA 2013 |

Appeal from the Order January 4, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 110103903

| | |
|---|---|
| MICHAEL MCCARTHY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DRISCOLL CONSTRUCTION CO. INC., L.F. DRISCOLL CONSTRUCTION CO. L.L.C., | |
| v. | |
| THE NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK, | |
| APPEAL OF: DRISCOLL CONSTRUCTION CO. INC., | |
| Appellant | No. 496 EDA 2013 |

J-A21007-14

Appeal from the Order January 28, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 110103904

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 19, 2014**

Driscoll Construction Co. Inc. and L.F. Driscoll Construction Co. L.L.C. ("Driscoll") filed these appeals from two orders entered by the trial court on January 4, 2013, and January 28, 2013, respectively.  The January 4th order denied Driscoll's post-trial motion,[1] which was filed following a jury award in favor of Appellee Michael McCarthy, and the January 28, 2013 order resolved a pending motion for indemnification filed by Mr. McCarthy.  After careful review, we affirm.

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  We observe that an appeal properly lies from judgment entered on a jury verdict rather than from denial of a post-trial motion filed after the verdict was rendered.  ***Grossi v. Travelers Personal Ins. Co.***, 79 A.3d 1141, 1145 n.1 (Pa.Super. 2013).  The certified record contains no indication that judgment was entered after the denial of Driscoll's post-trial motion. However, we are permitted to regard the judgment as having been entered and entertain the merits of the appeal from the January 4, 2013 order.  ***Id***. This construct promotes judicial economy since, if we quashed this appeal, judgment could be entered and another appeal would simply be filed. ***Fanning v. Davne***, 795 A.2d 388, 392 (Pa.Super. 2002); ***see also McCormick v. Northeast Bank of Pa.***, 561 A.2d 328, 330 n.1 (Pa. 1989) (order dismissing motion for post-trial relief was not reduced to judgment; in the interests of judicial economy, the Supreme Court regarded as done what should have been done, *i.e.*, reduction of the verdict to judgment, and proceeded to entertain merits of appeal).  Therefore, we will consider the judgment as having been entered and address the merits of the appeal from the order denying the post-trial motion.

- 2 -

On January 28, 2011, Mr. McCarthy instituted this personal injury action against Driscoll to recover for injuries that he sustained after he fell on January 29, 2009, at a train station on 30th Street in Philadelphia. Mr. McCarthy slipped and fell on ice pooled on the floor inside the station and injured his shoulder and knee. At the time, Mr. McCarthy was working as a Building System Specialist for the National Railroad Passenger Corporation ("Amtrak"). The station in question was owned by Amtrak. Driscoll was conducting construction in the station, and Mr. McCarthy alleged that its negligence caused the ice to accumulate on the floor. Driscoll thereafter joined Amtrak as an additional defendant and averred that Amtrak's negligence was the legal cause of the hazardous condition in question.

Mr. McCarthy previously settled any potential claim against Amtrak in an August 17, 2010 release that Mr. McCarthy executed in exchange for $150,000. Deducted from the gross settlement was $8,447, which was paid to satisfy a lien against Mr. McCarthy in favor of the Railroad Retirement Board, as well as $7,237.14 for benefit amounts paid by Amtrak pursuant to a Supplemental Sickness Plan.

The case proceeded to a jury trial where Mr. McCarthy received a verdict in the amount of $200,000. The jury apportioned liability sixty percent to Driscoll and forty percent to Amtrak, and the verdict against

Driscoll was reduced to $120,000 to reflect that apportionment of liability. Driscoll filed a timely post-trial motion.

On December 10, 2012, Amtrak filed a motion against Mr. McCarthy seeking its counsel fees and costs of $11,397.23, which it incurred in defending this case. It sought reimbursement pursuant to the August 17, 2010 release, wherein Mr. McCarthy agreed to indemnify Amtrak from any and all claims filed against Amtrak and arising from the January 29, 2009 accident.

Mr. McCarthy responded to Amtrak's request and also sought indemnification against Driscoll for an additional $252,716.58. Driscoll was served with that motion, which, on the cover sheet, had a clearly marked response date of December 31, 2012. The indemnification request was premised upon an agreement that Driscoll entered into with Amtrak and that inured to the benefit of Mr. McCarthy, as an Amtrak employee. Driscoll never responded to Mr. McCarthy's motion for indemnification.

On January 4, 2013, the trial court denied Driscoll's motion for post-trial relief, and on January 28, 2013, it resolved the outstanding request for attorney's fees filed by Amtrak as well as Mr. McCarthy's unopposed motion for indemnification. The January 28, 2013 order required Mr. McCarthy to pay Amtrak attorney's fees and costs, and granted the motion for indemnification filed by Mr. McCarthy.

Driscoll filed two appeals, one from the denial its post-trial motion and the other one from the January 28, 2013 order awarding Mr. McCarthy an additional $252,716.58. On February 4, 2013, Driscoll also filed a motion for reconsideration of the January 28, 2013 order, but that motion was dismissed due to Driscoll's appeal. Pa.R.A.P. 1701(a) (with exceptions not applicable herein, "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter").

In these appeals, Driscoll raises the following contentions:

I. Did the Court erroneously limit Appellant's cross examination of the Appellee after Appellee's counsel impermissibly introduced the issue of collateral source benefits during Appellee's testimony?

II. Did the Court erroneously fail to grant the Appellant's Motions for Mistrial when Appellee's counsel continued to misrepresent the law with respect to Appellee's entitlement to benefits under the Federal Employees Liability Act?

III. Did the Court erroneously grant Appellee's self-styled cross Motion for Indemnification against Appellant when Appellant had filed no motion against Appellee, and there was no motion properly before the Court and the cross motion was totally lacking in merit on its face?

IV. Did the Court err and abuse its discretion when it allowed the use of income tax returns to refresh Appellee's recollection when said returns were not produced in discovery, and not listed in Plaintiff's Pretrial Memorandum and when the Court's Pretrial Order expressly forbade the use of any document not so identified?

V. Did the Court err in denying Appellant's Motion for Remittitur in refusing to give Appellant credit for Appellee's settlement with Amtrak?

Appellant's brief at 4-5.

Driscoll's first issue concerning the trial court's ruling on cross-examination is subject to the following standard of review:

> The scope of cross-examination is within the sound discretion of the trial court, and we will not reverse the trial court's exercise of discretion in absence of an abuse of that discretion. Generally, every circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge is a proper subject for cross-examination, including any matter which might qualify or diminish the impact of direct examination.

***Jacobs v. Chatwani***, 922 A.2d 950, 965 (Pa.Super. 2007) (citation omitted).

The following facts are pertinent to Driscoll's first contention. During direct examination, Mr. McCarthy was asked about his receipt of Railroad Retirement Board ("RRB") benefits and his obligation to repay those benefits. The following exchange occurred:

Q.    Ladies and gentlemen of the Jury may be familiar with the term worker's compensation. Is there worker's compensation on the railroad?

A.    There is not.

Q.    There is some benefit that railroaders get that's different than everyone else. What is that benefit?

A.    From the Railroad Retirement Board.

Q.    Were you eligible for the benefit from the Railroad Retirement Board?

A.    I was.

Q.    Approximately how much was that benefit?

A.   It was five hundred a month while I was out - - five hundred a week while I was out - -

Q.   Was that significantly less - -

A.   It was five hundred every two weeks, I'm sorry.

Q.   I'm going to ask you one more time.  A third time is a charm.  How much was the Railroad Retirement Benefit that you received?

A.   A little over five hundred dollars every two weeks.

Q.   Is that amount of money substantially less than you were earning when you were working those two jobs?

A.   Yes.

Q.   Is that money, is that required to be repaid to the Railroad Retirement Board in the event of any recovery?

A.   Yes, they get paid back.

Q.   So it's a loan?

A.   Yes, sir.

Q.   So during - - when I asked you what you're looking to recover from this lawsuit, are you looking to recover your lost wages?

A.   Yes.

Q.   Other than this lawsuit, do you have any way of recovering lost wages?

A.   I do not.

N.T. Trial, 10/15/12, at 57-58.  Driscoll notably failed to object at any point to this line of questioning.

Driscoll suggests that its ensuing cross examination of Mr. McCarthy was somehow improperly restricted, but the record reveals Driscoll delved into the matter discussed by Mr. McCarthy during his direct testimony:

Q.    Now, your attorney asked you about worker's compensation, and you told the Jury that the railroad doesn't have worker's compensation; is that correct?

A.    That is correct.

Q.    You have the National Railway Benefit Plan?

A.    The railroads come under - - we don't come under Social Security.  We have our own railroad retirement plan and Railroad Retirement Board, and we pay into that.  That's the law we come under.

Q.    That's the money you said you have to repay?

A.    Correct.

Q.    You repaid it already, didn't you?

A.    Well, yes.

Q.    And because you don't have worker's compensation, **you have a right to sue your employer**, don't you?

Mr. Goggin:        Objection, Your Honor.

The Court:         Basis.

Mr. Goggin:        Relevance to our negligence claim here.

The Court:         Overruled.  You may answer.

By Mr. Sweeney:

Q.    Am I correct, you do have the right to sue?

A.    **We do**.

Q. You have a right to make a claim before you sue?

A. We do.

Q. So you do have a way to recover your lost wages from the railroad; is that correct?

A. I believe in going after the person responsible. It's not my makeup to go after people that I don't think did anything wrong.

Q. So you don't think you should have gone after the railroad in this case?

Mr. Goggin: Objection, Your Honor.

The Court: Sustained.

By Mr. Sweeney:

Q. Did you make a claim against the railroad in this case?

Mr. Goggin: Objection, Your Honor.

The Court: Sustained.

By Mr. Sweeney:

Q. **Did you recover your lost wages**?

Mr. Goggin: Objection, Your Honor.

The Court: Overruled. I think that's been asked and answered, but I'll allow it.

The Witness: No.

By Mr. Sweeney:

Q. **You did not recover lost wages**?

A. **A portion, but not all of it, no**.

*Id*. at 72-74 (emphasis added). Thus, two objections were sustained to questions about whether Mr. McCarthy thought he should sue Amtrak and whether he had sued Amtrak. However, Mr. McCarthy admitted, at other points during cross-examination, that he had the ability to sue Amtrak, that he had recovered a portion of his wages, and that he had already returned his RRB benefits to the RRB. By these answers, Mr. McCarthy acknowledged he had recovered money from Amtrak and his RRB benefits were already repaid.

Driscoll goes to great length to establish the impropriety of bringing up payments from other entities at trial. It notes that any reference to Mr. McCarthy's receipt of RRB benefits violated the collateral source rule, which provides:

> The collateral source rule, which is intended to protect tort victims, "provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." [***Nigra v. Walsh***, 797 A.2d 353, 356 (Pa.Super. 2002)] (quotation omitted). Thus, this rule "prohibits a defendant in a personal injury action from introducing evidence of the plaintiff's receipt of benefits from a collateral source for the same injuries which are alleged to have been caused by the defendant." ***Collins v. Cement Express, Inc.,*** 301 Pa.Super. 319, 447 A.2d 987, 988 (1982).

***Simmons v. Cobb***, 906 A.2d 582 (Pa.Super. 2006) (footnote omitted).

Thus, Driscoll's argument on appeal as to its first issue is largely devoted to the propriety of Mr. McCarthy's exploration of his RRB benefits in the first instance. It then argues that Mr. McCarthy opened the door to receipt of testimony as to any and all collateral source benefits and claims

- 10 -

that the trial court abruptly shut that door by not allowing Mr. McCarthy to answer the two questions.

Specifically, as to the first issue on appeal, Driscoll begins by noting that, when Mr. McCarthy settled with Amtrak, he repaid the RRB benefits. It continues, "It is respectfully suggested that it was a blatant misrepresentation of fact and law for Appellee to suggest that except for bringing a claim against Appellant, he had no other way of recovering his lost wages." Appellant's brief at 12. However, Driscoll did not object at all to Mr. McCarthy's testimony on this subject matter, and it waived its right to object to the evidence in question. *Shelhamer v. Crane*, 58 A.3d 767, 770 (Pa.Super. 2012) (citation omitted) ("Under prevailing Pennsylvania law, a timely objection is required to preserve an issue for appeal."); *Bell v. City of Philadelphia*, 491 A.2d 1386, 1390 (Pa.Super. 1985) (citations omitted). ("To avoid waiver, a party must make a timely objection. Timeliness requires a specific objection at the proper stage in the questioning of a witness."). Pa.R.C.P. 227.1(b)(1) (post-trial relief cannot be granted "unless the grounds therefor, . . . if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial[.]).

While Driscoll suggests that its cross-examination on this subject matter was restricted, it fails to set forth, at any point in its brief, the impeachment questions that Mr. McCarthy did answer. Specifically, Driscoll

- 11 -

was able to establish during cross-examination that Mr. McCarthy already received part of his wage loss, that he had the ability to sue Amtrak, and that he already repaid the RRB benefits.

Driscoll also complains that the trial court "failed to follow Pennsylvania law by allowing Appellee to testify that he had to pay back the $500 a week indemnity payments he had received[.]" Appellant's brief at 13. However, Driscoll did **not** object when this question was asked and, under the above precedent, also cannot raise this complaint on appeal.

While the objection initially was sustained as to the question about whether Mr. McCarthy did sue Amtrak, immediately thereafter the trial court permitted Mr. McCarthy to be questioned about whether he recovered any of his lost wages. Mr. McCarthy said that he had partially recovered his earnings. In light of the context of the question and answer and the previous admission that he could sue Amtrak, Mr. McCarthy implicitly acknowledged that his receipt of a portion of his lost wages derived from payment by Amtrak. Hence, we conclude that Driscoll waived its contention that Mr. McCarthy was improperly permitted to introduce proof in violation of the collateral source rule and that Driscoll's cross-examination was not incorrectly restricted.

Driscoll's second argument is derivative of its first position and pertains to closing remarks.[2] During closing argument, Mr. McCarthy's counsel maintained, "Mr. McCarthy did what he needed to do, like I told you, [he] does not get Worker's Compensation. He had part of his wages were paid." N.T. Trial, 10/16/12, at 40. Driscoll objected, but Mr. McCarthy's counsel noted that his argument was based upon testimony produced at trial. *Id*. at 41. Thus, counsel was allowed to proceed. Driscoll moved for a mistrial due to this argument.

Our standard of review "in the consideration of the denial of a motion for a new trial by a trial court is to assess and determine whether or not the trial court abused its discretion in denying such a motion." ***Poust v. Hylton***, 940 A.2d 380, 382 (Pa.Super. 2007) (citation omitted). An abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Id.*** (citation omitted).

Driscoll repeats the argument that it made in connection with its first issue. It notes that Mr. McCarthy's receipt of the RRB benefits was inadmissible at trial and that the evidence violated the collateral source rule.

_____

[2] In its brief, Driscoll wholly fails to delineate the portion of the closing comments to which this issue pertains. We therefore examine the remarks to which it objected at trial.

It maintains that Mr. McCarthy opened the door as to his receipt of any type of collateral benefit when he first mentioned the RRB benefits. However, Driscoll failed to object, in the first instance, to the testimony about RRB benefits. It then explored the subject matter itself during cross-examination. It was able to disclose to the jury that Mr. McCarthy's wages were partially repaid from a source that, by implication, was Amtrak. The portion of the closing remarks to which Driscoll raised a generalized and non-specific objection were matters of record, as noted by Mr. McCarthy. We cannot conclude, based on the arguments presented on appeal, that the trial court's refusal to grant Driscoll a new trial constituted an abuse of discretion.

Driscoll's third argument is scattershot. It maintains that Mr. McCarthy's motion for indemnification should not have been granted, even though it was unopposed, since: 1) when it was filed, Mr. McCarthy had "no pending Motion" against Driscoll, Appellant's brief at 17; 2) Mr. McCarthy's motion against Driscoll was not given a separate control number; 3) Mr. McCarthy's motion was a reply to Amtrak's motion for counsel fees, which was not filed against Driscoll; 4) Mr. McCarthy's motion for indemnification "on its face was lacking in legal and factual merit," Appellant's brief at 17; 5) the motion was not properly before the court in violation of Philadelphia local rule 208(3); and 6) the order violated 231 Pa.Code § 211.

As to the first three claims, we are unaware of any authority, and Driscoll provides us with none, that would prevent that motion from being granted on these grounds. Mr. McCarthy's motion was both in response to Amtrak's motion against it, but it also clearly contained a motion and claim for indemnification against Driscoll. The legal document that formed the basis for Mr. McCarthy's indemnification claim was attached to the motion. The motion was marked, on its cover sheet, with a response date. The order attached to the front of the motion outlined that Mr. McCarthy was seeking an additional award against Driscoll in the amount of $252,716.58. The motion also contained numerous attachments supporting that figure as the amount which Mr. McCarthy was entitled to receive. The motion contained a memorandum that set forth that Driscoll and Amtrak entered a contract that contained a clause indemnifying Mr. McCarthy for all losses, costs, expenses, including attorney's fees for which Mr. McCarthy may be responsible for or pay as a result of injury caused due to the work being performed by Driscoll at the Amtrak station.

The motion was served on Driscoll, which does not claim that it did not receive a copy. It was filed when the trial court still retained jurisdiction over this matter due to Driscoll's pending motion for post-trial relief and to Amtrak's pending motion against Mr. McCarthy for its costs and counsel fees. Hence, we reject Driscoll's first three challenges to the order awarding indemnification.

The ensuing two averments, which are that the motion was clearly lacking in merit and that it was filed in violation of a local rule, are waived as they are not supported by a single citation to legal authority. Indeed, Driscoll fails to even provide us with the content of the local rule in question. Pa.R.A.P. 2119, which outlines the requirements for the argument section of briefs, states in pertinent part that, "The argument . . . shall have . . . such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). As we observed in **Coulter v. Ramsden**, 94 A.3d 1080, 1088-89 (Pa.Super. 2014) (quotation marks and citations omitted):

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. . . . [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.

Driscoll's fourth and fifth challenges to the indemnification ruling are thus waived as lacking in development.

Moreover, Driscoll executed a contract with Amtrak that provided, in pertinent part:

> <u>INDEMNIFICATION</u>. [Driscoll] shall defend, indemnify and hold harmless [Amtrak], its officers, directors, **employees**, agents, servants, successors, assigns, and subsidiaries, **irrespective of their negligence or fault, from and against any and all losses** and liabilities, penalties, fines, forfeitures, demands, claims, causes of action, suits, **costs and expenses** (including cost of defense and attorney's fees), **which any or**

- 16 -

**all of them may hereafter incur**, be responsible for, or pay **as a result of injury**, death, disease, or occupational disease to any person, and for damage (including environmental contamination and loss of use) to or loss of any property, including property of [Amtrak], arising out of or in any degree **directly or indirectly caused by or resulting from activities of or work performed by [Driscoll]**, its officers employees, agents, servants, contractors, subcontractors, or any other person acting for or by permission of [Driscoll].

Motion, 12/10/12, at Exhibit A ¶ 3 (emphases added). Hence, we cannot conclude that the motion for indemnification, on its face, was wholly lacking in legal and factual merit.

Driscoll's final complaint about the grant of indemnification is that the trial court violated 231 Pa.Code § 211, which states:

Any party or the party's attorney shall have the right to argue any motion and the court shall have the right to require oral argument. With the approval of the court oral argument may be dispensed with by agreement of the attorneys and the matter submitted to the court either on the papers filed of record, or on such briefs as may be filed by the parties. The person seeking the order applied for shall argue first and may also argue in reply, but such reply shall be limited to answering arguments advanced by the respondent. In matters where there may be more than one respondent, the order of argument by the respondents shall be as directed by the court.

Driscoll argues that it was entitled to oral argument on the motion under this rule. Since Driscoll never requested oral argument and since the motion remained unopposed when it was granted, there was no reason to hold oral argument. *Godlewski v. Pars Mfg. Co.*, 597 A.2d 106 (Pa.Super. 1991). Thus, the trial court did not err in this respect.

Driscoll's fourth issue on appeal involves two evidentiary rulings by the trial court: 1) its decision to allow defense counsel to refresh Mr. McCarthy as to the amount of his wage loss by using the witness's income tax returns; and 2) its ruling that Mr. McCarthy was permitted to testify about the amount of money that he lost when he was forced to sell his vacation home due to the reduced income that he experienced while he was injured. Our standard of review in this context is narrow. *Lykes v. Yates*, 77 A.3d 27, 32 (Pa.Super. 2013).

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Id*. (citation omitted).

As to the use of Mr. McCarthy's income tax returns to refresh his memory, Driscoll complains that utilization of those documents violated two pretrial orders that precluded use at trial of any exhibit not produced and identified in pretrial discovery or pretrial memorandum. In this case, the income tax returns were not exhibits and were not admitted into evidence. They were used momentarily to refresh a witness's memory, and the two pretrial orders were not violated. Driscoll fails to raise any contention that the income taxes were improperly used to refresh Mr. McCarthy's memory.

Driscoll also maintains that Mr. McCarthy improperly was permitted to testify as an expert witness when he delineated how much he lost when he was forced to sell his vacation home. We disagree with this premise. *Richards v. Sun Pipe Line Co.*, 636 A.2d 1162, 1165 (Pa.Super. 1994) (owner may testify to the value of his property). Mr. McCarthy merely outlined what he paid for the house and for how much it sold. N.T. Trial, 10/15/12, at 66-67. There was no opinion, expert or otherwise involved in this simple calculation.

Driscoll's final issue is that the trial court erred in denying its motion to mold the verdict to allow it full credit for Mr. Driscoll's $150,000 settlement with Amtrak against the $200,000 jury verdict. Once again, Driscoll fails to provide a single legal citation in support of its one-paragraph argument. The verdict against Driscoll was reduced by $80,000, from $200,000 to $120,000, based upon the jury's apportionment of liability against Amtrak (forty percent) and Driscoll (sixty percent). Driscoll provides no authority for the proposition that it, as a non-settling tortfeasor, is entitled to the full benefit against its liability for a settlement reached between Amtrak, another tortfeasor, and Mr. McCarthy, the plaintiff, whereby the plaintiff received more money than he would have recovered through the jury award against Amtrak.

Orders affirmed.

Judge Strassburger joins the Memorandum.

- 19 -

Judge Ott files a Concurring Statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2014